702 A.2d 1336

ALLIS–CHALMERS CORPORATION PRODUCT LIABILITY TRUST, PLAINTIFF–APPELLANT, v. LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT–RESPONDENT/CROSS–APPEL-LANT/DEFENDANT–THIRD PARTY PLAINTIFF, v. LEVIN-SON, AXELROD, WHEATON AND GRAYZEL, P.C., CROSS–RE-SPONDENT/THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued November 19, 1997—Decided November 26, 1997.

Before Judges SHEBELL, A.A. RODRIGUEZ and COBURN.

*Kim M. Catullo* argued the cause for appellant (*Crummy, Del Deo, Dolan, Griffinger & Vecchione, P.C.*, attorneys; *Philip W. Crawford* and *Ms. Catullo*, on the brief).

*Craig W. Miller* argued the cause for defendant-respondent/cross-appellant/defendant-third party plaintiff (*Gallo, Geffner, Fenster, P.C.*, attorneys; *Mr. Miller*, on the brief).

*Kenneth Cohen* argued the cause for cross-respondent/third-party plaintiff (*Stevens & Minter*, attorneys; *Mr. Cohen*, of counsel, and on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On March 29, 1990, Marisa Dalfonzo, the wife of the decedent, Peter Dalfonzo, filed a wrongful death action in the Law Division naming Foley Towlift, Inc., Lift Trucks, Inc., and Nichols Engineering & Research Co. as defendants. The complaint was subsequently amended to name Allis–Chalmers Corporation Product Liability Trust (Allis–Chalmers) and Kalmar A.C. Handling Systems, Inc., as additional defendants. Dalfonzo was represented in

those proceedings by the law firm of Levinson, Axelrod, Wheaton and Grayzel, P.C. (Levinson Firm).

On September 25, 1992, Allis–Chalmers moved to file a third-party complaint against Liberty Mutual Insurance Company (Liberty), alleging that Liberty committed the tort of spoliation of evidence by consenting to the destruction of the forklift, manufactured by Allis–Chalmers, that overturned causing decedent's death. Liberty was the Workers' Compensation insurance carrier for decedent's employer, Able Fab Company (Able Fab), and was paying workers' compensation benefits to decedent's family. Allis–Chalmers alleged that Liberty was an interested party in the wrongful death action by virtue of its right to reimbursement of the workers' compensation benefits already paid to the decedent's family if decedent's estate recovered damages. Allis–Chalmers' motion was denied on October 13, 1992.

On November 10, 1992, Allis–Chalmers filed a separate action against Liberty alleging essentially the same cause of action as its previously unsuccessful motion. Liberty answered Allis–Chalmers' complaint and filed a third-party complaint against the Levinson Firm. Thereafter, the Levinson Firm moved to dismiss the third-party complaint for failure to state a cause of action. Levinson's motion was granted on June 25, 1993. At about that same time, the wrongful death claim was settled on behalf of Allis–Chalmers. On August 24, 1995, Liberty moved for summary judgment in the spoliation action. Allis–Chalmers opposed Liberty's motion and filed a motion to relax the burden of proof as to causation and damages at trial. Oral argument was heard on September 29, 1995, and Liberty was granted summary judgment.

Allis–Chalmers appeals and Liberty cross-appeals from the dismissal of its third-party complaint against the Levinson Firm. We affirm the grant of summary judgment as to Allis–Chalmers and dismiss the cross-appeal as moot.

Decedent was an employee of Able Fab. His death occurred while he was operating an allegedly defective forklift manufactured by Allis–Chalmers. The forklift was ultimately destroyed

and its destruction is the subject of this spoliation action. Nichols Engineering & Research Corporation sold the forklift to Able Fab; Foley Towlift, Inc. and Lift Truck, Inc. were responsible for the forklift's maintenance.

According to Mary Ann Matthiessen, an employee in Liberty's claims department, Liberty became aware of the fatal accident on December 7, 1989, the day after it occurred. Matthiessen was assigned on February 26, 1990 to investigate any potential third-party claims. On March 1, 1990, she stated she was present, at the request of Able Fab, Liberty's insured, when an engineer inspected the forklift to determine the viability of a third-party claim. Liberty and the Levinson Firm were to share the cost of the inspection. After the inspection, the engineer opined that there was a defect in the forklift that had probably led to the accident. Matthiessen had been instructed to cooperate with the Levinson Firm because Liberty "had a lot to gain ... in recovery."

Matthiessen admitted that the forklift was "an integral aspect of [her] determination of a potential third-party claim" because it was a "product-based third-party claim." Part of her duties as a Liberty representative was to ensure that Able Fab cooperated with the investigation of the third-party claim. Although she coordinated the examination of the forklift as well as the Levinson Firm's interview of Able Fab employees, she never directed Able Fab to preserve the forklift for the litigation.

In May 1990, DeMott of Able Fab contacted Matthiessen wanting to sell the forklift to Liberty for $6,000. Although they did not discuss anything about a duty to preserve the forklift, Matthiessen may have advised DeMott that it was in Able Fab's best interest to keep the forklift. Able Fab apparently had personal counsel at this time. Liberty considered purchasing the forklift, but eventually decided against it. Matthiessen said Liberty was aware "that the [forklift] could be a vital part of a third-party action" and that Able Fab was going to scrap the forklift if it was not bought. She

did not recall if Liberty discussed with the Levinson Firm that the forklift should be preserved.

Before Matthiessen rejected Able Fab's offer to buy the forklift, she spoke to Liberty's house counsel. Specifically, she told counsel "that we were the Workers' Compensation carrier for Able Fab, that there was a potential third-party claim, and Able Fab owned the product that was in question." She explained that Able Fab wanted to "get rid" of the forklift and she asked counsel whether Able Fab had a duty to retain the forklift. According to Matthiessen, she was advised that the Levinson Firm could get a court order requiring Able Fab to keep the forklift, but that there was nothing Liberty could do since Able Fab owned the property.

House counsel normally did not deal with Workers' Compensation. At the time of the conversation, counsel did not have knowledge of the third-party action to recover Liberty's lien for the benefits paid to Dalfonzo's estate. She thought Matthiessen only wanted to retain the forklift in relation to the compensation matter. Counsel did not recall knowing that the forklift was going to be destroyed and only thought the insured wanted to sell it.

After the conversation, Matthiessen told DeMott that Liberty did not wish to purchase the forklift. Matthiessen did not remind DeMott of Able Fab's duty, as the insured, to cooperate with Liberty. Although she was cognizant of Able Fab's duty to cooperate under the insurance contract, Matthiessen perceived Able Fab's duty to be in relation to cooperating on the defense of the Workers' Compensation claim and she never invoked this duty with respect to the preservation of the forklift.

Liberty became aware that Able Fab had scraped the forklift in December 1990. According to DeMott, Liberty had instructed Able Fab not to use the forklift after the accident, and that is why he asked Liberty's permission to scrap the forklift. The Levinson Firm had previously only instructed him to keep the forklift until it could be inspected.

Allis–Chalmers obtained an expert's report dated October 15, 1992. It concluded that the forklift did not have a manufacturer's defect. However, Allis–Chalmers contends this report was "certainly undermined" by its expert's inability to examine the forklift. Allis–Chalmers also obtained an expert's opinion that Liberty had a duty to prevent the destruction of the forklift, and a report discussing "the lack of evidence available to [Allis–Chalmers] in the [Dalfonzo matter]."

It appears that the Law Division judge considered the viability of Allis–Chalmers' action against Liberty under the law pertaining to the tort of fraudulent concealment of evidence, which is recognized in New Jersey and requires wilful conduct. *See Viviano v. CBS, Inc.*, 251 *N.J.Super.* 113, 123, 597 *A.*2d 543 (App.Div.1991), *certif. denied*, 127 *N.J.* 565, 606 *A.*2d 375 (1992); *Hirsch v. General Motors Corp.*, 266 *N.J.Super.* 222, 246, 628 *A.*2d 1108 (Law Div.1993). Allis–Chalmers contends this caused the judge to mistakenly grant summary judgment.

New Jersey Appellate Courts have not recognized the tort of negligent spoliation of evidence. We do, however, recognize causes of action for fraudulent concealment of evidence. *Hirsch, supra*, 266 *N.J.Super.* at 237, 628 *A.*2d 1108. The elements of fraudulent concealment of evidence are:

> (1) that defendants had a legal obligation to disclose the evidence to plaintiff; (2) that the evidence was material to plaintiff's case; (3) that plaintiff could not have readily learned of the concealed information without defendants disclosing it; (4) that defendants intentionally failed to disclose the evidence to plaintiff; and (5) that plaintiff was harmed by the [sic] relying on the nondisclosure.
>
> [*Id.* at 238, 628 *A.*2d 1108 (citing *Viviano, supra*, 251 *N.J.Super.* at 123, 597 *A.*2d 543).]

Although the requisite intent is less than an "evil minded act," it requires more than mere negligence. *Viviano, supra*, 251 *N.J.Super.* at 126–30, 597 *A.*2d 543.

The evidence presented by Allis–Chalmers in opposition to Liberty's motion cannot support a finding that Liberty's refusal to buy the forklift, even in the face of its imminent destruction, was intentional. On the contrary, Matthiessen sought legal advice as

to what she could do to prevent Able Fab from destroying the forklift. She was told that Liberty could not prevent Able Fab, the owner, from destroying the forklift. Even assuming that this advice from Liberty's counsel was incorrect, it appears that there was no intent on Liberty's part to destroy the forklift.

■ We, therefore, must consider whether to impose on Liberty a duty to preserve the evidence. Although Liberty was not involved in the litigation as a named party, it had a substantial interest in a favorable outcome of that litigation. Liberty, therefore, cooperated with the Levinson Firm on that claim.

The tort of negligent spoliation of evidence has not been readily recognized by many courts. *Hirsch, supra,* 266 *N.J.Super.* at 242, 628 *A.2d* 1108. We have, heretofore, viewed the remedy available for the negligent loss or destruction of evidence, i.e., imposition of sanctions available for a discovery violation, as sufficient. *Nerney v. Garden State Hosp.,* 229 *N.J.Super.* 37, 40–42, 550 *A.2d* 1003 (App.Div.1988).

A judge may exclude evidence that is offered in violation of a discovery order, pursuant to the following provisions of *Rule* 4:23–2:

> (b) Other Matters. If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

> ....

> (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the introduction of designated matters in evidence[.]

> [*R.* 4:23–2(b)(2).]

■ When a party fails to comply with discovery, the trial court, in its discretion, may impose appropriate sanctions. *Brown v. Mortimer,* 100 *N.J.Super.* 395, 401, 242 *A.2d* 36 (App.Div.1968). "The application of sanctions is consigned to the sound discretion of the court, subject only to the rule that the sanction visited upon the party must be just and reasonable." *Ibid.; see also Abtrax*

*Pharmaceuticals, Inc. v. Elkins–Sinn, Inc.* 139 *N.J.* 499, 512–13, 655 *A.*2d 1368 (1995).

Allis–Chalmers argues that it had no other choice than to settle with the Dalfonzo Estate given the absence of the forklift for inspection by an expert. The motion judge opined that Allis–Chalmers could have availed itself of the various remedies available in response to a discovery violation. Certainly, in considering a motion brought pursuant to *R.* 4:23–2, a judge could have found that Allis–Chalmers would have been substantially prejudiced by not being able to inspect the forklift in answering plaintiff's expert's opinion that it was defective.

However, it is unlikely that plaintiff's expert's testimony and any other evidence of defects in the forklift, would have been suppressed or other effective sanctions imposed to remedy the situation, as the parties to the wrongful death action were not the ones responsible for loss of the forklift. Consequently, it is arguable that the remedies presently available to those prejudiced by the loss or destruction of evidence are not adequate, and that a cause of action for negligent spoliation is desirable. *Cf. Nerney, supra,* 229 *N.J.Super.* at 40–42, 550 *A.*2d 1003.

In *Viviano, supra,* 251 *N.J.Super.* at 125–26, 597 *A.*2d 543, we referred to the elements of the tort of spoliation of evidence as follows:

(1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful or, possibly, negligent destruction of evidence by the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts. [citations omitted].

We will not discuss the pros and cons of recognizing a cause of action for purely negligent spoliation of evidence as we are convinced that Liberty had no duty to preserve evidence in the circumstances presented. *Boyd v. Travelers Ins. Co.,* 166 *Ill.*2d 188, 209 *Ill.Dec.* 727, 731, 652 *N.E.*2d 267, 271 (1995). There was no agreement, contract, or special circumstances as would justify placing the burden of acquiring and preserving the forklift on Liberty, as the machine was owned by Able Fab and was not in

Liberty's possession or control. Nor do we perceive that Liberty voluntarily assumed any such duty.

We decline to impose on Liberty the duty to affirmatively obtain ownership and control of the forklift for the benefit of Allis–Chalmers' defense. Imposition of such an affirmative duty would go far beyond recognizing a tort that requires a party to refrain from negligently destroying evidence. On the present facts, one must wonder why the action brought by Allis–Chalmers did not name Able Fab as a defendant since that is the party that caused the evidence to be destroyed.

In view of our ruling, Liberty's appeal of the dismissal of its third-party complaint against the Levinson Firm is moot.

Affirmed as to appeal. Cross-appeal is dismissed as moot.