Zdenko KOLANOVIC and Nicolina Kolanovic, Plaintiffs,

v.

Pak GIDA a/s (Turkey) and Pinat Gida a/s (Turkey), Defendants.

No. CIV. 97–2397(JAG).

United States District Court, D. New Jersey.

Dec. 29, 1999.

Christine E. Navarro, Law Office of Martin Lassoff, New York, NY, for Plaintiffs.

De Orchis, Walker & Corsa, LLP, Union, NJ, for Defendants.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on defendants' motion for partial summary judgment on Counts III and IV of plaintiffs Zedenko and Nicolina Kolanovic's ("plaintiffs") Amended Complaint. The defendants moving for partial summary judgment are Pak Gida Uretim Pazarlama A.S., incorrectly sued as Pinat Gida a/s (Turkey), and Pinat Gida Sanayi Ve Ticaret A.S., incorrectly sued as Pinat Gida a/s (Turkey) ("defendants")[1]. For the follow-

---

1. Defendants are foreign corporations.

ing reasons, this Court grants partial summary judgment for defendants on the third and fourth claims of plaintiffs' Amended Complaint.

## FACTS

On February, 3, 1996, at about 3:30 a.m., plaintiff Zedenko Kolanvic ("plaintiff")[2] was on board of the SUAT ULUSOY, a cargo vessel. Kolanovic, a longshoreman, was assisting with the loading of cargo containers while the SUAT ULUSOY was berthed at Global Terminals in Jersey City, New Jersey. After completing the cargo work on board the vessel, plaintiff used a ladder, supplied by a seaman[3], to go from the roof of one container to another container to exit the ship.[4]

Prior to using the ladder, plaintiff did not notice anything wrong with the ladder; in fact, he had not seen the ladder prior to it being delivered to him by two Turkish seamen. While plaintiff ascended the ladder to exit the cargo hatch, either the ladder slipped on ice located on the container, and/or a rung on the ladder broke or bent. As a result, plaintiff lost control of both the ladder and his body. Plaintiff fell backward from the ladder onto the surface of the lower container roof allegedly causing injury to himself.

At the time of the accident, there were four (4) seamen in the hatch with plaintiff, each of them was supposed to hold the ladder while plaintiff ascended it. When plaintiff fell the only person securing the ladder was fellow longshoreman, Robert Waanamen ("Waanamen"). Waanamen held the ladder at the top from the higher container—none of the other seamen were holding the ladder. Waanamen was the only witness to the fall.

Wannanen stated that 1) at the time of plaintiff's fall, plaintiff was almost half-way up the ladder; 2) the safety shoes and feet that were normally part of the ladder were missing; 3) when Waanamen used the ladder right before plaintiff's fall, he did not notice any missing or loose rungs; and 4) the rungs and the frame of the ladder were bent. Waananen stated also that nothing on the subject ladder broke during plaintiff's fall.

According to Chief Officer Bulent Cihangiroglu ("Cihangiroglu")[5], at the time of the accident it was snowing, and there was snow and ice on both containers involved in the accident. Cihangiroglu stated also that the ladder supplied by the vessel had no safety shoes and that the presence of snow and ice made the ladder highly slippery and unsafe. Cihangiroglu claims that the ladder was not missing any rungs. After plaintiff's fall, the ladder was eventually removed from the vessel's hold up to the deck, where the ladder was inspected and photographed by Luard & Company, marine surveyors.[6] Luard & Company acted at the behest of the vessel owners. Cihangiroglu stated that photographs of the ladder taken after plaintiff's fall accurately reflect the condition of the ladder.

Waananen confirmed that the ladder in the photographs is the subject ladder. *See* Defs.' Br. at 4; Unger Decl., Ex. H. Waan-

2. Plaintiff had been a longshoreman for seventeen years, and had worked for Global Terminals in Jersey City since 1982. A longshoreman loads and discharges cargo onto and off of ships that Port in Terminals. Longshoremen work only while ships are at Port—they do not sail out to sea and are not seamen.

3. A seaman is a sailor who goes out to sea. The seamen in the hatch were Turkish seamen who sail and travel with the ship.

4. Plaintiff had to use the ship's ladder to exit the hold of the vessel as there was not sufficient space to lower a safety cage into the

vessel's cargo hatch to remove the longshoremen. The safety cage is the usual and customary way to leave the hatch. The safety cage is a steel box, which longshoremen use to enter and exit the cargo hatch. Safety precautions require longshoremen to immediately leave the cargo hatch after completing the loading work.

5. Chief Officer Cihangiroglu is the Chief Officer of the SUAT ULUSOY.

6. A marine surveyor is hired by a ship's owner to inspect the ship for damage to the ship, its cargo, or to people aboard the ship.

anen stated that the condition of the subject ladder in the photographs was the same as when the subject ladder was used by himself and plaintiff. Global Terminal & Container Services, Inc. and the Bayonne Police Department each prepared an accident report. Neither of the reports mention broken or loose rungs on the ladder. *See* Defs.' Br. at 4.

Cihangiroglu stated that once he learned of the accident, he notified defendants' claims representatives, Ship Owners Claim Bureau, who sent a Marine Surveyor ("defendants' surveyor") on board the vessel. Defendants surveyor did not take a statement from any of the witnesses to the accident, including Cihangiroglu and the four (4) seamen in the hatch.

Defendants' surveyor, however, took photographs of the ladder lying flat on a snowy icy deck the same day that the accident occurred.[7] Plaintiffs claim that defendants knew from the onset both that there was a claim that this accident was caused by a defective ladder, supplied by the ship to a longshoreman and that a lawsuit would follow. Plaintiffs contend that the ladder disappeared after plaintiff filed this Federal Complaint in September 1997. Plaintiffs claim further that they were not provided with an opportunity to examine the photographs, which the surveyor took, until some time after the accident, pursuant to the direction of Magistrate Haneke. Plaintiffs allege that it would be impossible for them to determine the current condition of the ladder, and to determine whether or not the ladder required a metallurgical inspection.

Plaintiffs stated that after looking at the photographs of the ladder, it is clear that this ladder should not have been used at any time prior to, or subsequent to, plaintiff's accident. Furthermore, plaintiffs' expert, John Keefe, stated that when an accident occurs and the offending parties are aware of the accident, the vital evidence, such as the ladder in this case, should be kept safe, taken off of the ship, and put into a place where it could be produced for inspection by the parties' experts. Even so, Keefe confirmed that in his experience, where the subject apparatus is not available for litigation, photographs of the apparatus are sufficient. *See* Keefe Dep.,[8] Ex. K at 100–02.

Defendants claim that Luard & Company issued a report, dated March 8, 1996, with photographs, which declared that the subject ladder "had uneven side rails, ... rungs [that] ... turn[ed] in their sockets, and ... [that some of the rungs had the] plastic coating shifted from the center towards one side." Defs.' Br. at 3–4. Luard & Company reported that it did not note that anything was wrong with the ladder.

Plaintiffs commenced this lawsuit on May 8, 1997, approximately fifteen months following the subject events. As of September 1996, the ladder remained on board the vessel and was in use by the vessel's crew[9]. Defendants' claims adjuster contends that the ladder was aboard the vessel as late as July 1997. According to defendants, plaintiffs did not request inspection of the ladder until February 17, 1998, approximately two years after the accident. Defendants claim also that plaintiffs' lawyers failed to make a request to defendants' insurer's claims adjuster to produce the ladder or to have it tested by a metallurgist. Also, defendants claim that plaintiffs never requested that defendants "hold and keep safe" the subject ladder. Plaintiffs concede, however, that they are "probably not" prevented ... from proving at trial a necessary element of their underlying cause of action for negligence by the absence of the ladder. Unger Decl., Ex. B at 1–5.

---

7. Plaintiffs claim that these photographs did not reveal the bends in the ladder or the missing parts of the ladder, whereas an upright view of the ladder would have shown clearly the bends in the ladder and the missing parts of the ladder.

8. Keefe Dep. refers to the deposition of John Keefe, taken September 22, 1998.

9. The vessel's crew are its seamen who sail and travel with the vessel.

Defendants argue that New Jersey state law does not recognize causes of action for spoliation of evidence relating to claims between the plaintiff and the defendant to a primary action. Defs.' Br. at 5. Specifically, defendants assert that New Jersey has not recognized the causes of action for either negligent or intentional spoliation of evidence claims "when the spoliation affects the ability of a party to the primary action to establish its claims." *Id.* Defendants contend further that New Jersey recognizes spoliation of evidence claims only "when the spoliation cause of action between a plaintiff and defendant in the primary action is based on either the plaintiff's or defendant's ability to properly prosecute a claim against a non-party." *Id.*

In Counts three and four of plaintiffs' Amended Complaint, dated July 27, 1998, plaintiffs allege negligent spoliation and intentional spoliation, respectively. *See* Pls.' Am. Compl. at 3–4. Defendants have moved for partial summary judgment on the third and fourth causes of action in plaintiffs' Amended Complaint. For the following reasons, this Court grants defendants' motion for partial summary judgment.

## DISCUSSION

### STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact, and the evidence establishes the moving party's entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). In making this determination, the court must draw all reasonable inferences in favor of the non-movant. *See Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir.1994); *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir. 1992).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *See Jersey Cent. Power & Light Co. v. Township of Lacey,* 772 F.2d 1103, 1109 (3d Cir.1985). The party opposing the motion for summary judgment cannot rest on mere allegations, but must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995). "[U]nsupported allegations in [a plaintiff's] memorandum and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990); *see also* Fed.R.Civ.P. 56(e) (requiring non-moving party to "set forth specific facts showing that there is a genuine issue for trial"). In determining whether there are any issues of material fact, the Court must resolve all reasonable doubts as to the existence of a material fact against the moving party. *See Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). "In other words, the inquiry involves determining, whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pitak v. Bell Atlantic Network Svcs., Inc.,* 928 F.Supp. 1354, 1366 (D.N.J.1996) (citations and internal quotations omitted). The Court will address each claim separately.

### A. INTENTIONAL SPOLIATION OF EVIDENCE

The tort of Spoliation of Evidence has its origin in California in *Smith v. Superior Court.* 151 Cal.App.3d 491, 198 Cal. Rptr. 829 (1984). In that case, the plaintiff was injured when the left rear wheel flew off of a van and smashed through the plaintiff's car's windshield. *See id.* at 494,

198 Cal.Rptr. 829. The impact forced glass to hit the plaintiff in her eyes and face, causing permanent blindness in both eyes and impairing her sense of smell. *See id.* The plaintiff was permitted to amend her personal injury complaint to allege Tortious Interference with Prospective Civil Action By Spoliation of Evidence against the car dealer who had customized the van with special wheels. *See id.* at 494–95, 198 Cal.Rptr. 829. The car dealer had promised to maintain the tire and other automotive parts of the van, (i.e. physical evidence), but had failed to do so.[10] *See id.* at 494, 198 Cal.Rptr. 829. The court held that there were "sound and practical reasons for allowing [plaintiff's] cause of action for intentional spoliation of evidence." *Id.* at 503, 198 Cal.Rptr. 829. A number of jurisdictions have followed California's lead. *See e.g., Holmes v. Amerex Rent–A–Car,* 710 A.2d 846 (D.C.App. 1998) (certifying answer that, for first time, DC recognizes tort of negligent spoliation of evidence); *Coleman v. Eddy Potash, Inc.,* 120 N.M. 645, 905 P.2d 185, (1995) (stating New Mexico recognizes tort of intentional spoliation of evidence); *Smith v. Howard Johnson Co.,* 67 Ohio St.3d 28, 615 N.E.2d 1037, (1993) (certifying answers to District Court that Ohio would recognize tort of negligent spoliation of evidence); *Hazen v. Mun. of Anchorage,* 718 P.2d 456 (Alaska 1986) (stating Alaska recognizes intentional spoliation tort where defendant altered tapes); *Boyd v. Travelers Ins. Co.,* 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267 (1995) (stating claim for negligent spoliation could be stated under existing Illinois law).

Other Courts, however, have declined to recognize the tort of spoliation. *See, e.g., Elias v. Lancaster Gen. Hosp.,* 710 A.2d 65 (Pa.Super.1998) (stating Pennsylvania does not recognize tort of negligent spoliation); *Monsanto Co. v. Reed,* 950 S.W.2d 811 (Ky.1997) (stating that Kentucky will not recognize new cause of action of spoliation of evidence); *Beers v. Bayliner Marine*

*Corp.,* 236 Conn. 769, 675 A.2d 829 (1996) (stating that at most, negative inference may arise for spoliation of evidence); *Koplin v. Rosel Well Perforators, Inc.,* 241 Kan. 206, 734 P.2d 1177 (1987) (stating absent contract, agreement, or special duty to preserve evidence, Kansas will not hold a third party liable for spoliation of possible evidence for another party to aid that other party in some future legal action against a third-party.)

The California Supreme Court, however, in a case subsequent to *Smith,* noted that the tort of spoliation is teeming with incertitude. In *Youst v. Longo,* the California Supreme Court stated that "*Smith* may represent the most speculative advantage that has heretofore been recognized by the California appellate courts." 233 Cal.Rptr. 294, 729 P.2d 728, 734–35 (1987). Even so, New Jersey, influenced by California's *Smith* and its progeny, recently recognized the tort of spoliation of evidence. Prior to 1991, spoliation claims were not recognized in New Jersey. In 1991, following California's lead, New Jersey, in *Viviano v. CBS, Inc.,* recognized a tort of fraudulent concealment. 251 N.J.Super. 113, 597 A.2d 543 (App.Div.1991), *cert. denied,* 127 N.J. 565, 606 A.2d 375 (1992).

The Appellate Division in *Viviano* was presented with a claim of fraudulent concealment of evidence. *See id.* at 119–120, 597 A.2d 543. In *Viviano,* the plaintiff worked for the defendant CBS and operated a record press, which through an accident caused by a defect in a component part, destroyed three and a half of her fingers. *See id.* at 117, 597 A.2d 543. The plaintiff sued CBS for fraudulently concealing a memo containing information relevant to her product liability suit against the manufacturer of the defective part of the press. *See id.* at 119–20, 597 A.2d 543. The Appellate Division analogized the plaintiff's fraudulent concealment cause of action to, and adopted the elements of, "a

---

**10.** Without the physical evidence, the plaintiff was unable to test and to inspect the parts to pinpoint the cause of the failure of the assem-

bly of the van's wheel. *See Smith,* 151 Cal. App.3d at 494, 198 Cal.Rptr. 829.

recently recognized cause of action for destruction of evidence which has been dubbed 'spoliation of evidence.'" *Id.* at 125, 597 A.2d 543. Thus, the Appellate Division substituted concealment of evidence with destruction of evidence, and stated that "[i]mmunizing the willful destruction or concealment of evidence would not further the policy of encouraging testimonial candor." *Id.* at 126, 597 A.2d 543. In addition, the court stated that "[d]estruction of evidence known to be relevant to pending litigation violates the spirit of liberal discovery. Intentional destruction of evidence manifests a shocking disregard for orderly judicial procedures and offends traditional notions of fair play." *Id.* at 127, 597 A.2d 543. Thus, the Appellate Division held that an employer "who fraudulently concealed information relevant to another employee's suit against third parties for work-related [personal] injuries are answerable in damages to the injured employee." *Id.* at 117, 597 A.2d 543.

■ *Viviano* delineated the elements of the tort of spoliation of evidence as follows: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful or, possibly, negligent destruction of evidence by the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts. 251 N.J.Super. 113 at 126, 597 A.2d 543 (citations omitted).

In *Larison v. City of Trenton,* a federal court here in Trenton faced the issue of whether to permit a plaintiff to amend his complaint to add tort claims for negligent and intentional spoliation of evidence. 180

F.R.D. 261 (D.N.J.1998). There, the court noted that

> the existence of an affirmative cause of action for spoliation of evidence is a matter of state law. As such, this court must be guided by the decisions of New Jersey's highest court. *See Gares v. Willingboro Tp.,* 90 F.3d 720, 725 (3d Cir.1996). Although several Appellate Division cases have recognized the affirmative cause of action for fraudulent concealment of evidence established in *Viviano* [11], there is no New Jersey Supreme Court case which has considered this newly recognized tort. Nor do the few cases considered by the federal courts in the District of New Jersey offer much guidance. *See Trump Taj Mahal Assoc. v. Costruzioni Aeronautiche Giovanni,* 761 F.Supp. 1143 (D.N.J.1991) (declining to adopt the tort of intentional spoliation prior to adoption by the New Jersey state courts.) [, *aff'd* 958 F.2d 365 (3d 1992), *cert. denied,* 506 U.S. 826, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992) ]; *PBA Local No. 38 v. Woodbridge Police Dep't,* 832 F.Supp. 808 (D.N.J.1993) (noting that it is not entirely clear that New Jersey recognizes the tort of spoliation of evidence, but assuming it does, [it recognizes the tort] in the limited context of ruling on motion to amend to add a claim for spoliation of evidence).

*Larison,* 180 F.R.D. at 265. Because the New Jersey Supreme Court had not yet faced this issue, the New Jersey District Court in *Larison* determined that "this court must base its decision on a prediction of how the New Jersey Supreme

---

11. The New Jersey Superior Court, Appellate Division, in *Allis–Chalmers Corp. Prod. Liab. Trust v. Liberty Mut. Ins. Co.,* acknowledged that New Jersey courts recognize the tort of fraudulent concealment of evidence, although in that case the requisite intent was absent. 305 N.J.Super. 550, 556, 702 A.2d 1336 (App. Div.1997). Similarly, the Appellate Division in *Fox v. Mercedes–Benz Credit Corp.,* acknowledged the existence of the cause of action, intentional concealment of evidence, but found it inapplicable where plaintiff was the

alleged spoliator. 281 N.J.Super. 476, 482–83, 658 A.2d 732, (App.Div.1995); *but see, Marinelli v. Mitts & Merrill,* 303 N.J.Super. 61, 74–75, 696 A.2d 55 (App.Div.1997) (finding that although the *Viviano* court recognized a fraudulent concealment tort, it "never specifically adopted an independent cause of action for the intentional spoliation of evidence ..." and finding issue moot as plaintiffs were not damaged by destruction of evidence).
*Larison,* 180 F.R.D. at 265 & n. 2.

Court would proceed." *Id.; see also Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 516 (3d Cir.1997) (stating that "[u]nfortunately, we do not know how broadly or narrowly the New Jersey Supreme court would construe the doctrine [in this case, spoliation] because it has not yet resolved this issue. Accordingly, we must do our best to predict how it would do so"); *City of Erie v. Guaranty Nat. Ins. Co.*, 109 F.3d 156, 159–60 (3d Cir.1997) (stating where Pennsylvania had not yet decided when tort of malicious prosecution occurs for purposes of insurance coverage, federal court would predict how Pennsylvania Supreme Court would decide).

Due to the concerns articulated in *Larison*, this court is skeptical as to whether the New Jersey Supreme court would adopt the new tort of spoliation of evidence. There, the court stated that

> the elements of the prima facie case cannot be established unless and until the plaintiff has failed to prove his case without the missing evidence. If plaintiff prevails on his underlying cause of action, there are no damages resulting from the destruction of the evidence. On the other hand, if plaintiff is unsuccessful in his case, the claim of spoliation must go forward. This appears to necessitate a bifurcated trial which will result in prolonging the period before a case is finally resolved. If the plaintiff does not succeed on the merits and the trial of a spoliation claim becomes necessary, plaintiff must establish that this inability to prove his case resulted from the destruction of evidence, and not some other inherent weakness in plaintiff's case. Further, this difficulty in proving causation may be enhanced by the fact that the spoliated evidence may never have been viewed by plaintiff. Finally, plaintiff must establish his damages, or, the amount plaintiff would have recovered in the event plaintiff had prevailed.

*Larison*, 180 F.R.D. at 266 (footnote omitted). *Larison* concluded that the suitable and functional remedy is to maintain the current practice of the imposition of sanctions against a spoliator. This court is in accord and finds no justification for discontinuing the custom of " '[t]he vast majority of jurisdictions [that] have chosen to counteract a party's deliberate destruction of evidence with jury instructions and civil penalties.' " *Id.* at 266 (quoting *Monsanto Co.*, 950 S.W.2d at 815) (alterations in original). Furthermore, in the unlikely event that the New Jersey Supreme Court would adopt *Viviano*, plaintiffs' claims would fail still, because they cannot satisfy *Viviano's* prima facie standards.

Plaintiffs argue that they can maintain a cause of action for intentional spoliation. Specifically, plaintiffs contend that they meet the required showing of intentional spoliation because they can show that (1) there is pending or probable litigation involving the plaintiff; 2) the defendants knew that litigation may exist or is probable; 3) the defendants willfully destroyed evidence with the design to disrupt the plaintiffs' case; 4) the plaintiffs' case is disrupted; and 5) the plaintiffs have sustained damages proximately caused by defendants' destruction of evidence.

Plaintiffs ask that this Court deny defendants' partial summary judgment motion, and find that, under *Viviano*, they have an intentional spoliation claim. Defendants argue that this Court should not extend *Viviano* to this case. Specifically, defendants contend that *Viviano* has permitted spoliation actions only against third parties, and that therefore, because the spoliation actions in this case are against primary parties, plaintiffs should not be permitted to allege spoliation claims against defendants. In addition, defendants argue that plaintiffs cannot prove the *Viviano* elements.

As defendants point out, the spoliation cause of action in *Viviano* did not pertain to plaintiff's claim against CBS, but rather, to the plaintiff's inability to prosecute her claim against a third party, the manufacturer of the alleged defective component on the record press. In *Viviano*, there-

fore, the court held "that a corporate employer and its supervisory employees who fraudulently concealed information relevant to another employee's suit against third parties for work-related injuries are answerable in damages to the injured employee." *Id.* at 117, 597 A.2d 543.[12]

■ Plaintiff has alleged facts sufficient to establish the first two elements of the cause of action: that at the time of the destruction of the ladder, there was pending or probable litigation involving plaintiff; and that defendants knew that litigation existed or was probable. Plaintiffs commenced this lawsuit on May 8, 1997. Defendants' claims adjuster, Edward Jones, admitted that the ladder was aboard the vessel as late as July 1997. *See* Jones Dep. at 33–34.[13] Thus, at the time the ladder was destroyed, litigation was pending. In addition, the defendants' claims adjuster admitted also that he was aware "that claims were being made both in a lawsuit and by claim letters from another person that here was a claim of a defective ladder." *Id.* at 34.

Plaintiffs have failed to allege facts sufficient to establish the remaining three Viviano elements.[14] The third *Viviano* element concerns the willful or negligent destruction of evidence by defendant that is intended to disrupt the plaintiffs' case. Here, plaintiffs have failed to allege sufficient facts to establish a claim that defendants intentionally destroyed the ladder to disrupt a lawsuit.

■ To prove willful destruction, it must be shown that defendants intentionally failed to disclose, [or as here, destroyed] evidence material to plaintiffs' personal injury case; that plaintiffs could not have learned of that evidence but for the defendants' disclosure; and that plaintiffs were harmed by the unavailability of the evidence. *See Fox v. Mercedes–Benz,* 281 N.J.Super. at 482, 658 A.2d 732.[15] Plaintiffs have failed to prove that they could not have learned of the evidence without defendants' disclosure because plaintiff already knew of the existence of the ladder, had pictures of the ladder, and had seen the ladder. Here, plaintiff was not deprived of evidence to prove his claim.

■ In addition, "[t]he existence of a duty to preserve evidence is a question of law to be determined by the court." *Aetna Life and Cas. Co. v. Imet Mason Contractors,* 309 N.J.Super. 358, 365, 707 A.2d 180 (1998) (citing *Hirsch v. General Motors Corp.,* 266 N.J.Super. 222, 249, 628 A.2d 1108 (Law Div.1993)). Furthermore, "[t]he scope of the duty to preserve evidence is not boundless. A potential spoliator need do only what is reasonable under the circumstances." *Callahan v. Stanley Works,* 306 N.J.Super. 488, 496, 703 A.2d 1014 (Law Div.1997) (citations and internal

---

**12.** Although defendants argue that because plaintiffs' spoliation suit does not pertain to an underlying action, the spoliation claims should not be considered by this court, this court has not found any law supporting defendants' contention. Moreover, subsequent to plaintiffs' filing of this lawsuit, in *Larison,* the New Jersey District Court opined on a spoliation of evidence cause of action, which did not concern an underlying action. 180 F.R.D. at 261. This court rejects defendants' contention that his case is an issue of first impression to the New Jersey District Court. This court will proceed with an analysis of this cause of action in spite of the fact that in this case, the spoliation claims do not involve an underlying action.

**13.** "Jones Dep." refers to the deposition of Edward Jones taken on August 12, 1998.

**14.** Because the *Viviano* test is conjunctive, all elements must be met for an intentional concealment claim to survive. As plaintiffs have failed to satisfy the third element, this court is not required to analyze the fourth and fifth elements. Even so plaintiffs have failed to meet the last two elements of the *Viviano* test, thereby resolving this case. With that in mind, this court need not determine whether this new tort would be adopted by the New Jersey Supreme Court.

**15.** The *Fox* court noted that "[i]n *Viviano* we identified the concealment tort as an analogue of the tort of spoliation of evidence. The spoliation tort developed from instances where a person intentionally interfered with a plaintiff's prospective civil claim." *Fox,* 281 N.J.Super. at 482, 658 A.2d 732.

quotations omitted). Moreover, intent has been attributed "to a spoliator who has violated a court order or an argument to preserve evidence." *Hirsch,* 266 N.J.Super. at 241, 628 A.2d 1108 (citations omitted). In fact, *Larison* held that

> where a spoliator has not violated a court order or an agreement to preserve the evidence, traditional tort principles suggest that courts should require plaintiffs seeking recovery for intentional spoliation of evidence to prove that the defendant intended to produce the harm or knew with substantial certainty that the harm, interference with another's prospective civil suit, would follow.

180 F.R.D. at 269 (internal quotations omitted) (citing *Hirsch,* 266 N.J.Super. at 241, 628 A.2d 1108).

Here, the ladder was destroyed. As defendants note, "it is uncertain at what point in time the ladder was replaced on board the vessel." Defs.' Br. at 10. At most, it was destroyed due to negligence. In fact, defendants kept the ladder for at least seventeen (17) months after the accident occurred. *See supra,* Facts at 5. Worth noting, is the testimony of defendants' witness, Edward Jones, who indicated that he never promised to retain the ladder and that he was never affirmatively told or asked by plaintiffs to retain the ladder, nor did plaintiffs request that he send the ladder to a metallurgist. *See* Jones Dep. at 35. In addition, there exists contemporaneous photographic evidence of the ladder's condition supported by eyewitness testimony. Although it is unfortunate that the ladder was destroyed, defendants' lack of diligence does not support plaintiffs' claim that defendants acted intentionally to impede plaintiffs' claims. As *Larison* points out:

> Moreover, this court has failed to uncover, and plaintiff has failed to bring to

this court's attention, any New Jersey cases where a claim for spoliation of evidence has been allowed against a defendant who has either not undertaken an affirmative duty to preserve the evidence or has not deliberately taken affirmative acts during the litigation to conceal relevant evidence from plaintiff. *See Allis–Chalmers Corp. Prod. Liab. Trust,* 305 N.J.Super. at 556, 702 A.2d 1336 (holding that the defendant manufacturer could not assert a third-party claim of spoliation of evidence against the insurance company as the insurance company had not affirmatively undertaken to preserve this evidence and it was not in the insurance company's possession or control); *Viviano, supra,* (finding plaintiff could assert claim for spoliation of evidence against her employer, where employer had concealed and misrepresented acts during discovery in suit against manufacturer.) [16]

*Larison,* 180 F.R.D. at 270. This court finds that defendants' acts do not rise to the level of intentional spoliation.

Plaintiffs have failed also to establish the fourth element, disruption of the plaintiffs' case. Here, plaintiffs are not prevented from proving their case due to the unavailability of the ladder. This case can be distinguished from the destruction of the pallet in *Callahan.* In that case, the defendant's loss prevention supervisor testified that he placed an evidence tag on the pallet right after the accident and stored it for safekeeping. *See Callahan,* 306 N.J.Super. at 493, 703 A.2d 1014. In addition, unlike this case, there were no photographs taken of the pallet after the accident. *See id.* Thus, the court determined that "[t]he subject pallet is the key piece of evidence ... [without which the plaintiff] may be unable to prove the underlying

---

**16.** Even the New Jersey Superior Court, Law Division, which permitted plaintiff to assert a negligent spoliation claim against his employer in connection with his claim against a manufacturer, based its finding upon the "existence of 'special circumstances' from which a jury could conclude that ... [the employer]

gratuitously undertook a duty to preserve ... [the evidence] and failed to perform that duty."

*Larison,* 180 F.R.D. at 270 & n. 13 (quotations and alterations in original) (citing *Callahan,* 306 N.J.Super. at 497, 703 A.2d 1014).

action against [the pallet's manufacturer]." *Callahan*, 306 N.J.Super. at 497–98, 703 A.2d 1014.

The instant case may also be contrasted with *Viviano*, where the information in the memo was otherwise completely unattainable by the plaintiff, yet was absolutely essential to prove the plaintiff's case. *Viviano*, 251 N.J.Super. at 121, 597 A.2d 543. In *Callahan* and *Viviano*, the lack of evidence constituted an insurmountable impediment to the plaintiffs' cases. Here, however, the ladder is corroborative evidence, and its absence does not impede plaintiffs' ability to prove his case through his own testimony or otherwise. In addition, plaintiffs have pictures of the ladder that, according to plaintiff's own expert, are considered sufficient where the subject apparatus is not available for litigation. *See* Keefe Dep., Ex. K at 100–02. Finally, plaintiffs have failed to convince this Court that their negligence case will be disrupted given their admission that the loss of the ladder has "probably not" prevented them from proving their negligence claim against defendants. *See* Keefe Dep., Ex. K at 100–02.

Finally, the fifth element of a claim for intentional spoliation—damages proximately caused by the defendant's acts—is inconsistent with plaintiff's position that the loss of the ladder has "probably not" prevented them from proving their negli-

gence claim against defendants at trial. Since the loss of the ladder does not prevent plaintiffs from proving their claims, there can be no damage from the unavailability of the ladder.

This court finds that defendants have upheld their burden to prove that no material issues of fact exist upon which the parties differ. Thus, defendants' motion for partial summary judgment on Count IV of plaintiff's Amended Complaint is granted.

## B. NEGLIGENT SPOLIATION

■ Plaintiffs state that "New Jersey ... now recognizes negligent spoliation." Pls.' Br. at 4. Plaintiffs rely on *Allis–Chalmers* and *Callahan* to argue that they can maintain a cause of action for negligent spoliation.[17] Specifically, plaintiffs contend that both *Allis–Chalmers* and *Callahan* allow the "new tort of negligent spoliation of evidence [to] benefit parties disadvantaged by the loss of evidence, whether they are plaintiffs or defendants."[18] Pls.' Br. at ¶ 3. Plaintiffs have missed the mark.

To begin, plaintiffs have relied on, and cited to, the only New Jersey case wherein a Law Division court permitted a negligent spoliation claim. *See generally, Callahan*, 306 N.J.Super. 488, 703 A.2d 1014.[19] The correct and accurate statement, however,

---

**17.** Plaintiffs allege that they can demonstrate a cause of action for negligent spoliation because of the following scenario: 1) defendants were aware that an accident occurred on a ladder; 2) defendants sent a surveyor on board the vessel to inspect and take photographs to he ladder; 3) defendants should have preserved the evidence at issue, i.e. the ladder; 4) defendants did not preserve the ladder; and 5) defendants either negligently or deliberately destroyed the ladder. *See* Pls.' Br. at ¶ 4.

Plaintiffs argue that the disappearance of the ladder should be considered by the jury to decide whether plaintiff was furnished with a reasonably safe ladder. *See id.* at ¶ 14. Plaintiffs contend that if a jury could look at the ladder, it could find that the defendants were negligent in furnishing the ladder, which inflicted injury to the plaintiff. *See id.* at ¶ 13. In addition, plaintiffs argue that

shortly after the date of the accident, defendants knew that a lawsuit would be brought regarding plaintiff's accident on the ladder. *See id.* at ¶ 14.

**18.** Plaintiffs, however, give no cites to support this contention.

**19.** In *Callahan*, the plaintiff, an employee of Home Depot, was injured at work when he and another Home Depot employee who operated a fork lift, attempted to move a pallet of storm doors between a storage rack and the selling floor. *See id.* at 492, 703 A.2d 1014. During the move, when the pallet and the storms doors tipped off of the forks of the fork lift, the pallet struck the plaintiff, knocking him unconscious and inflicting the plaintiff with serious injuries. *See id.* Subsequent to the accident, the defendant Home Depot lost the pallet. *See id.*

is that "New Jersey Appellate Courts have *not* recognized the tort of negligent spoliation of evidence." *Allis–Chalmers Corp. Prod. Liab. Trust,* 305 N.J.Super. at 556, 702 A.2d 1336 (emphasis added); *Larison,* 180 F.R.D. at 271; *see Proske v. Barnabas Med. Ctr.,* 313 N.J.Super. 311, 316, 712 A.2d 1207 (App.Div.1998), *cert. denied,* 158 N.J. 685, 731 A.2d 45 (1999). Indeed, after *Allis–Chalmers* expressly stated that the New Jersey Appellate Courts have *not* recognized the tort of negligent spoliation of evidence, the court observed that "[t]he tort of negligent spoliation of evidence has not been readily recognized by many courts. [Thus the court] viewed the remedy available for the negligent loss or destruction of evidence, i.e., imposition of sanctions available for a discovery violation, as sufficient."[20]  305 N.J.Super. at 557, 702 A.2d 1336.

In *Proske,* the plaintiff's appeal was limited to their claim of negligent spoliation of evidence. 313 N.J.Super. at 313, 712 A.2d 1207. There, the Appellate Division reasoned that "the plaintiffs ask that we take this opportunity to establish this new theory of tort recovery[,] [negligent spoliation of evidence,] in New Jersey. Generally, a new cause of action should be created by legislative enactment or by the Supreme Court rather than by an intermediate appellate court." *Id.* at 316, 712 A.2d 1207 (citations omitted). The court observed further that "[i]n the absence of precedent, or at least clear direction by dictum from our Supreme Court, we conclude that ... where no breach of any common-law duty is implicated in the slightest[,][d]evelopment of policy is for the Supreme Court in this instance, as in most instances." *Id.* at 316, 712 A.2d 1207 (quoting *Coyle v. Englander's,* 199 N.J.Super. 212, 226, 488 A.2d 1083 (App.Div.1985)). Recognizing that "the majority of jurisdictions have not recognized negligent spoliation as an independent tort," the Appellate Division affirmed the lower court's grant of the defendants' summary judgment motion. *Id.* at 316–17, 712 A.2d 1207.[21]

---

The plaintiff filed a cause of action against Home Depot for negligent spoliation of evidence. *See id.* Specifically, the plaintiff alleged that by negligently or carelessly losing the pallet, Home Depot thereby hampered plaintiff's ability to prosecute a claim against the third-party defendant Stanley, the shipper of the pallet, "which may have been the instrument of the injury." *Id.*

Home Depot moved to dismiss the complaint alleging that New Jersey had not yet recognized the tort of negligent spoliation of evidence. *See id.* at 492, 703 A.2d 1014. The court made the following observations. First, the court acknowledged that New Jersey had not yet recognized the tort of negligent spoliation of evidence. *See id.* at 493, 703 A.2d 1014. Thus the court resolved that

[t]he present case therefore involves an issue of first impression: May an injured employee make a negligent spoliation of evidence claim against an employer on the ground that the loss or destruction of the evidence which the employer undertook to preserve disrupts the employee's ability to pursue a third party negligence action?

*Id.* at 494, 703 A.2d 1014. Second, the court noted that " 'the negligent loss of evidence is comparable to a party's failure to comply with discovery obligations, which may result in an order barring introduction of evidence at trial ....' " *Id.* at 493, 703 A.2d 1014

(quoting *Nerney v. Garden State Hosp.,* 229 N.J.Super. 37, 40, 550 A.2d 1003 (App.Div. 1988)). Third, the court noted that although the *Viviano* court was not presented with a claim of negligent spoliation of evidence, the *Viviano* court "created a cause of action for willful concealment of evidence." *Id.* at 494, 703 A.2d 1014. Fourth, the court observed that in 1991, seven years before *Callahan* was filed, and six months prior to the *Viviano* decision, the District Court of New Jersey "refused to recognize a claim of spoliation of evidence, arguing that the creation of a new cause of action is a matter best left to the New Jersey state courts." *Id.* (citing *Trump Taj Mahal,* 761 F.Supp. 1143).

*Callahan* held that "[b]ecause of [the pallet's] unavailability, [the plaintiff] may be unable to prove the underlying action against [the third-party defendant]. In that event, [the plaintiff's] only remedy would be a claim of negligent spoliation of evidence against Home Depot." *Id.* at 497–98, 703 A.2d 1014.

**20.** Moreover, the court expressly declined "to discuss the pros and cons of recognizing a cause of action for purely negligent spoliation of evidence." *Allis–Chalmers,* 305 N.J.Super. at 558, 702 A.2d 1336.

**21.** The court reasoned that "[w]ith the admonition of *Coyle, supra,* against the creation of

In addition, the Appellate Division in *Hewitt v. Allen Canning Co.*, recently addressed the negligent spoliation of evidence issue. 321 N.J.Super. 178, 728 A.2d 319 (App.Div.), *cert. denied*, 161 N.J. 335, 736 A.2d 528 (1999). There, the defendant moved to bring an underlying third-party claim against a law firm representing the plaintiff in the primary action, alleging spoliation of evidence. *See id.* at 181–82, 728 A.2d 319. The court reasoned that

> although damages are not ordinarily-available to a defendant who is preju-diced by spoliation, a defendant who has been deprived of the ability to defend an action brought by a plaintiff because a third party has destroyed evidence may have an action for money damages against the spoliator.

*Id.* at 184, 728 A.2d 319 (citations omitted). The Court held that if upon remand, the plaintiff was prejudiced by the third-party law firm's spoliation of the evidence, "a discovery remedy would [be appropriate]." *Id.* at 184–85, 728 A.2d 319. On appeal from the Appellate Division's decision, the New Jersey Supreme Court denied certification in *Hewitt*. 161 N.J. 335, 736 A.2d 528. Under these circumstances, *Larison*, *Pittston*, and *Erie*, suggest that this Court must do its best to predict how the New Jersey Supreme Court would proceed. *See Larison*, 180 F.R.D. at 271; *Pittston Co. Ultramar Am. Ltd.*, 124 F.3d at 516; *City of Erie*, 109 F.3d at 159–60.

As the New Jersey Appellate Division has not yet recognized the tort of negli-gence spoliation of evidence, and because the New Jersey Supreme Court declined, even in dicta, to recognize the tort in *Hew-itt*, this Court concludes that the New Jersey Supreme Court would not recog-nize the tort of negligent spoliation of evidence at this time.[22]

This Court "decline[s] plaintiffs' invita-tion to create a new cause of action, believ-ing that role is better suited to New Jer-sey state courts." *Trump Taj Mahal*, 761 F.Supp. at 1162. Further, this court re-jects plaintiffs' challenge to recognize a negligent spoliation cause of action in New Jersey. Thus, defendants' motion for par-tial summary judgment on Count III of plaintiffs' Amended Complaint is granted.

## CONCLUSION

For the foregoing reasons, this Court grants partial summary judgment for de-fendants on plaintiffs' third and fourth claims of plaintiffs' Amended Complaint.

---

new torts by an intermediate appellate court in mind, we certainly should not engage in dictum supporting the introduction of this tort into our jurisprudence when the case can be resolved by noting that the elements have not been satisfied." *Proske*, 313 N.J.Super. at 318, 712 A.2d 1207.

**22.** This court concurs with the majority of the state courts that the appropriate remedy for the negligent spoliation of evidence cause of action is through discovery sanctions. *See Hirsch*, 266 N.J.Super. at 256, 628 A.2d 1108 ("[W]here a defendant negligently spoliates evidence, there has been a failure to comply with civil discovery."); *Nerney v. Garden State Hosp.*, 229 N.J.Super. at 40, 550 A.2d 1003 ("The negligent loss of evidence is compara-ble to a party's failure to comply with discov-ery obligations, which may result in an order barring the introduction of evidence at trial").