**Rosemary STERBENZ, Plaintiff,**

v.

**Janet ATTINA and Commercial Union Insurance Company, Defendants.**

**No. 00–CV–670(RLM).**

United States District Court, E.D. New York.

June 11, 2002.

Solomon Abrahams, White Plains, NY, for Rosemarie Sterbenz.

Patrick Aurilia, Scibilia Polacco & Aledort, Hempstead, NY, for Janet Doe, Commercial Union Ins. Companies.

### MEMORANDUM AND ORDER

MANN, United States Magistrate Judge.

Plaintiff Rosemary Sterbenz ("plaintiff" or "Sterbenz"), individually and as administratrix of the estate of her late husband, Robert Sterbenz ("the decedent"), seeks compensation for damages suffered as a result of the sale by defendant Commercial Union Insurance Company ("Commercial Union" or "defendant"), of the automobile that had been involved in the accident that caused the decedent's death. Plaintiff complains that defendant's disposition of the vehicle prevented her from bringing a products liability action against the manufacturer of the vehicle.

After the instant action was removed from state court on diversity grounds, the parties consented to have a magistrate judge handle the case for all purposes, pursuant to 28 U.S.C. § 636(c). Currently pending before this Court is a motion by defendants Commercial Union and Janet Attina ("Attina") for summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff has opposed the motion, and has submitted what purports to be a cross-motion for sanctions based on spoliation of evidence. For the reasons that follow, the defense motion for summary judgment is granted in its entirety, and plaintiff's cross-motion for sanctions is denied.

### FACTUAL BACKGROUND

**The Parties' Factual Submissions**

As a preliminary matter, plaintiff's submissions are patently deficient. Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York requires a party moving for summary judgment to submit "a separate, short and concise statement" setting forth material facts as to which there is no genuine issue to be tried. Local Civ. R. 56.1(a). The party opposing the motion must respond with a statement of facts as to which a triable issue remains and "may not rest upon the mere allegations or denials of [his] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (2002); see Local Civ. R. 56.1(b). Furthermore, "[e]ach statement of material fact by a movant or opponent must be followed by citation to [admissible] evidence ...." Local Civ. R. 56.1(d) (citing Fed.R.Civ.P. 56(e)). The facts presented in the movant's statement "will be deemed to be admitted unless controverted" by the opposing party's statement. Local Civ. R. 56.1(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir.2000); Dittmer v. County of Suffolk, 188 F.Supp.2d 286, 292 (E.D.N.Y.2002).

■ While both parties to this action filed Rule 56.1 statements, see [Defendants'] Rule 56.1 Statement of Material

Facts ("Def. Stmt."); [Plaintiff's] Rule 56.1 Statement of Material Facts ("Pl. Stmt."), plaintiff's submission ignores a number of defendants' record-based factual assertions and contains conclusory factual allegations with no citations to the record.[1] Where plaintiff has not responded to defendants' factual assertions—all of which are established by documentary evidence and/or the deposition testimony of plaintiff or her counsel—this Court has deemed those facts to be uncontroverted.

## The Uncontroverted Facts

This action arose out of a single-vehicle accident, which occurred on February 12, 1999. *See* Def. Stmt.¶1; Pl. Stmt. ¶3. Plaintiff was driving the family's 1998 Plymouth Voyager, which was insured by Commercial Union pursuant to a "Custom–Pac" policy ("the Policy") that was issued in New York and was in effect on the date of the accident. *See* Amended Complaint ("Am. Compl.") ¶¶ 4, 6; *see also* Custom–Pac Policy, attached as Exhibit N to defendants' "Notice of Motion."[2] While traveling on Route 402 in Pennsylvania with the decedent in the front passenger's seat, the car veered off the road and into a series of trees, causing the death of the decedent. *See* Affirmation of Patrick Aurilia, Esq. ("Def. Affm.") ¶5; Affidavit of Solomon Abrahams, Esq. ("Pl. Aff.") ¶4.

Officers with the Blooming Grove Police Department responded to the scene and advised plaintiff that they would secure the vehicle. *See* Def. Stmt. ¶2. The following day, after plaintiff and her father were informed of the vehicle's location by the police, they went to remove personal items from the vehicle, at which time they were given a business card for Art's Auto Body, the entity holding the vehicle. *See* Def. Affm. ¶¶ 8, 15; *see also* Def. Stmt. ¶3. Two to three weeks later, plaintiff's father again contacted Art's Auto Body and was told that the vehicle remained at the same location. *See* Def. Affm. ¶ 9.

Meanwhile, on February 26, 1999, within two weeks of the accident, plaintiff retained the services of Solomon Abrahams, Esq., to represent her in connection with the accident. *See* Def. Stmt. ¶4; *see also* Retainer Agreement (Def.Ex.G).[3] That day, Mr. Abrahams received from defendant a six-page fax confirming, *inter alia,* that the vehicle was still being held at Art's Auto Body. *See* Def. Stmt. ¶¶5–6; *see also* [Defendants'] First Notice to Admit (Def.Ex.I); [Plaintiff's] Response to

---

1. Additionally, plaintiff's Rule 56.1 Statement, which is appended to plaintiff's "Notice of Motion," verges upon the incomprehensible. Although plaintiff lists six factual assertions as to which she "contend[s] that genuine exist to be tried [sic]," this Court assumes that the first four items—concerning the accident and insurance coverage—are facts that plaintiff contends present *no* genuine issues for trial. *See* Pl. Stmt.

 The inadequacies of plaintiff's papers are part and parcel of the mishandling of the case by plaintiff's counsel, Solomon Abrahams, who also happens to be plaintiff's key witness. Plaintiff's skimpy motion papers have in large part defeated the purpose and utility of Local Civil Rule 56.1, i.e., to facilitate the determination of summary judgment motions. *See Bellis v. Tokio Marine & Fire Ins. Co.,* No. 93

 CIV. 6549(DAB), 2002 WL 193149, at *1 n. 1, (S.D.N.Y. Feb.7, 2002)

2. Hereinafter, citations to exhibits attached to defendants' Notice of Motion will be indicated by "Def. Ex. [letter designation]."

3. According to the deposition testimony of plaintiff's counsel, Mr. Abrahams, he contacted Commercial Union to ascertain the whereabouts of the vehicle at some point starting in March 1999—at about the same time plaintiff's father confirmed that the location of the vehicle had not changed since the day after the accident. *See* Def. Affm. ¶10; *see also* Deposition of Solomon Abrahams, Esq., dated December 19, 2000 ("Abrahams Dep.") at 19 (Def.Ex.H). *See infra* pages 69–70 & note 4.

First Notice to Admit (Def.Ex.J). This fax cautioned that the vehicle was "collecting storage [and] should be moved ASAP," and further disclosed that on February 24, 1999, the vehicle had been inspected and declared a total loss by Michael Lukasavage of Property Damage Appraisers. *See* [Plaintiff's] Response to Notice for Discovery & Inspection (Def.Ex.K).

Neither Mr. Abrahams nor anyone acting on plaintiff's behalf contacted Art's Auto Body to arrange an inspection of the vehicle. *See* Def. Stmt. ¶¶ 7–8. Eventually, pursuant to the terms of the Policy, Commercial Union purchased the vehicle from plaintiff for its full value, less the deductible. *See* Am. Compl. ¶ 11; Pl. Stmt. ¶ 4; Plaintiff's Responses to First Set of Interrogatories (Def.Ex.P) at ¶ 10. Neither Mr. Abrahams nor any other representative of plaintiff sought to repurchase the vehicle to use in litigation. *See* Abrahams Dep. (Def.Ex.H) at 32–33; Def. Ex. P at ¶ 10.

Although Mr. Abrahams had been apprised by defendant and possibly his client that the vehicle was being held at Art's Auto Body Shop (*see* Def. Stmt. ¶¶ 6–7), he did not communicate with an expert about inspecting the vehicle until June 15, 1999, four months following the accident, when he wrote to one Erik Carlson. *See* Def. Stmt. ¶ 8; Def. Affm. ¶ 14; *see also* Abrahams Dep. (Def.Ex.H) at 33–35; Attorney Notes (Def.Ex.L). Mr. Carlson went to inspect the vehicle on July 23, 1999, and learned that the car had been sold on May 17, 1999, and was not available for inspection. *See* Attorney Notes (Def.Ex.L).

**Plaintiff's Contested Facts**

While plaintiff fails to address many of the facts outlined by the defense in its Rule 56.1 Statement, Mr. Abrahams does claim to have contacted Attina, one of Commercial Union's claims agents, on a number occasions in March and April 1999, to advise that plaintiff was considering bringing a products liability action, and to request the location of the vehicle for inspection—notwithstanding the fact that Mr. Abrahams had been advised of the vehicle's location no later than February 26, 1999. Mr. Abrahams further alleges that Attina initially denied knowing the location of the vehicle and that, when she thereafter notified him, at an unspecified time, that the vehicle had been moved to Auto Placement Center ("APC"), a salvager in Rock Tavern, New York, plaintiff's expert went to the location but the vehicle had been sold. *See* Pl. Stmt. ¶¶ 5–6; Pl. Aff. ¶¶ 9–10; *see also* Def. Affm. ¶¶ 11–13; Def. Ex. I, Def. Ex. J.[4]

### *DISCUSSION*

Summary judgment may be granted only where the pleadings and evidence in the record "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *see* Fed. R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a

---

**4.** Neither plaintiff's counsel nor Attina had any record of these communications (*see* Def. Affm. ¶ 11; Def. Ex. I; Def. Ex. J) and, at her deposition, Attina could not recall the conversations. *See* Def. Ex. O at 14. According to Attina, she first became aware of plaintiff's intention to inspect the vehicle and file a products liability claim when she received a letter from plaintiff's counsel in July 1999, after the vehicle had been transferred to the salvager, APC, and destroyed. *See id.* at 22, 26–27.

rational trier could not find for the non-movant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992) (internal quotation marks and citations omitted).

## The First Cause of Action: Breach of the Policy's Covenant of Good Faith

The amended complaint purports to state three causes of action. Plaintiff's first cause of action alleges that, by disposing of the vehicle, defendants breached the covenant of good faith and fair dealing that is implied in all insurance contracts in the State of New York. *See* Am. Compl. ¶ 19.[5]

■ Under New York law, every contract has an implied covenant of good faith and fair dealing. *See M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir.1990). Plaintiff's first claim is thus based on the insurance contract between the parties. *See Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir.1980); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 319–20, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 452–54, 605 N.Y.S.2d 208, 626 N.E.2d 24 (1993); *Page One Auto Sales v. Commercial Union Ins. Cos.*, 176 Misc.2d 820, 824, 674 N.Y.S.2d 577 (1998).

■ As it is the written contract that governs the relationship between the parties, a court is not at liberty to impose obligations inconsistent with those imposed under the written agreement. *See Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992); *In re Minpeco, USA, Inc.*, 237 B.R. 12, 26 (Bankr.S.D.N.Y.1997); *see also Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d

1, 15–16, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). Accordingly, a party that has acted in compliance with the rights expressly provided in the governing contract cannot be held liable for breaching an implied covenant of good faith. *See In re Minpeco*, 237 B.R. at 26 (quoting *Hartford Fire Ins. v. Federated Dep't Stores*, 723 F.Supp. 976, 991 (S.D.N.Y.1989)).

■ Here, plaintiff does not and cannot allege that defendants in any way breached the parties' contract or deprived her of any rights to which she was entitled under the Policy. On the contrary, plaintiff admits that Commercial Union purchased the vehicle for full value, less the specified deductible, in accordance with its obligations. *See* Am. Compl. ¶ 11; Def. Ex. N (the Policy); *see also* Plaintiff's Response to First Set of Interrogatories (Def.Ex.P) at # 9. As plaintiff identifies no contractual breach—other than the alleged breach of the implied covenant of good faith—nor loss of any contractual benefit, her amended complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.

## The Second Cause of Action: Breach of Statutory Duty of Good Faith

■ Plaintiff also seeks punitive damages for defendants' alleged breach of the duty of good faith and fair dealing implied by section 2601 of New York's Insurance Law, which prohibits insurers from engaging in "unfair settlement practices." However, the New York Court of Appeals has consistently held that "the law of this State does not currently recognize a private cause of action under [New York] Insurance Law § 2601," and that, "[t]o the extent the decisions below hold otherwise,

5. The parties are in agreement that, as the Policy was issued in New York to New York residents, New York law applies.

they are not to be followed." *Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 614–15, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994) (citations omitted); *see also Northwestern Mut. Life Ins. Co. v. Wender*, 940 F.Supp. 62, 64 n. 2 (S.D.N.Y. 1996); *New York Univ.*, 87 N.Y.2d at 317–18, 639 N.Y.S.2d 283, 662 N.E.2d 763. Accordingly, as a matter of law this claim must fail. *See Harris v. Allstate Ins. Co.*, 83 F.Supp.2d 423, 432 (S.D.N.Y.2000).[6]

## The Third Cause of Action: Loss of Consortium

 Plaintiff also seeks damages for loss of consortium following her husband's death. However, it is well settled in New York that a claim for loss of consortium "is a derivative action and, as such, its viability is dependent on the viability of a primary cause of action .... " *Panczykoski v. Laborers Int'l Union of N. Am.*, No. 97–CV–0036A, 2000 WL 387602, at *14 (W.D.N.Y. Mar.31, 2000) (citations omitted); *see also Montefusco v. Nassau County*, 39 F.Supp.2d 231, 243 (E.D.N.Y. 1999); *Liff v. Schildkrout*, 49 N.Y.2d 622, 632, 427 N.Y.S.2d 746, 404 N.E.2d 1288 (1980) ("Nor can it be said that a spouse's cause of action for loss of consortium ex-ists in the common law *independent of the injured spouse's right to maintain an action for injuries sustained.*") (citations omitted; emphasis added). Here, as in *Panczykowski*, "[as] all the primary causes of action on which the derivative loss of consortium claim is dependent fail, the derivative claim also falls." *Panczykowski*, 2000 WL 387602, at *14. Plaintiff's third claim is dismissed.[7]

## Plaintiff's Unpled Spoliation Claim

Although plaintiff's papers in support of her cross-motion state that "the thrust of plaintiff's claim is based on the legal concept of spoliation of evidence performed by the defendant," [Plaintiff's] Notice of Motion ¶ 3, neither the complaint nor amended complaint pleads a spoliation claim. However, in order to avoid needless motions practice in the future, the Court will address plaintiff's unpled spoliation claim.

The New York Court of Appeals has yet to address the viability of a tort claim for spoliation of evidence. Nevertheless, nearly every lower state court in New York to examine the issue, as well as decisions of federal courts construing New York law, have "follow[ed] the majority view and do not recognize spoliation of

---

**6.** Moreover, where á claim for punitive damages seeks an additional remedy for a breach of contract, the New York Court of Appeals has prescribed the essential elements that must be pled: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in *Walker v. Sheldon* (10 N.Y.2d 401, 404–405[, 223 N.Y.S.2d 488, 179 N.E.2d 497] [1961] ); (3) the egregious conduct must be directed to plaintiff; and (4) *it must be part of a pattern directed at the public generally....* " *New York Univ.*, 87 N.Y.2d at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (emphasis added); *see also Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220(AJP), 1998 WL 665138, at *1–2 (S.D.N.Y. Sept.25, 1998). Even assuming *arguendo* that plaintiff had stated an actionable claim for breach of contract, her claim for punitive damages could not be sustained, given her failure to allege any of the foregoing elements.

**7.** Moreover, even if the third claim were recast not as a separate cause of action but as an element of damages within a wrongful death action, and even assuming *arguendo* that Commercial Union's disposal of the automobile constituted a wrong against the decedent rendering defendant liable for wrongful death damages, plaintiff nevertheless could not recover for loss of consortium. As the New York Court of Appeals has declared: "[A] claim for loss of consortium will not be recognized within a wrongful death action in this State." *Liff*, 49 N.Y.2d at 634, 427 N.Y.S.2d 746, 404 N.E.2d 1288.

evidence as a cognizable tort action." *Weigl v. Quincy Specialties Co.*, 158 Misc.2d 753, 756, 601 N.Y.S.2d 774, 776 (1993); *accord Tiano v. Jacobs*, No. 98 Civ. 6229(DC), 2001 WL 225037, at *4 (S.D.N.Y. Mar.6, 2001); *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F.Supp.2d 565, 586 (S.D.N.Y.1999); *Tietjen v. Hamilton–Beach/Proctor–Silex, Inc.*, No. 97 CV 188, 1998 WL 865586, at *3 (N.D.N.Y. Nov.25, 1998); *Whittlesey v. Espy*, No. 96 Civ. 0671(BSJ), 1996 WL 689402, at *1 (S.D.N.Y. Nov.26, 1996) ("plaintiff cannot [ ] allege a separate cause of action based upon a defendant's spoliation of evidence."); *Mondello v. Dun & Bradstreet Corp.*, No. 94 Civ. 4383(RWS), 1996 WL 239890, at *3 n. 1 (S.D.N.Y. May 9, 1996) (plaintiff cannot "state[ ] a claim for destruction of evidence under New York law.").

Independent research by this Court[8] has uncovered only one decision in New York that, based on the "unique facts of [that] case," recognizes a separate cause of action against an insurer for negligent spoliation of evidence. *See Fada Indus., Inc. v. Falchi Bldg. Co.*, 189 Misc.2d 1, 11, 730 N.Y.S.2d 827 (2001) (co-defendant, a co-tenant whose water heater allegedly damaged plaintiff tenant's property, brought a third-party spoliation claim against its insurer, which had lost or destroyed the water heater). Even if this Court were to adopt the approach suggested by the court in *Fada*,[9] plaintiff would still fail on the facts of this case.

Even in those jurisdictions that recognize a tort claim for spoliation of evidence, the courts have acknowledged that "[t]he scope of the duty to preserve evidence is not boundless." *Hirsch v. General Motors Corp.*, 266 N.J.Super. 222, 251, 628 A.2d 1108, 1122 (1993); *accord In re Wechsler*, 121 F.Supp.2d 404, 420 (D.Del.2000); *Kolanovic v. Gida*, 77 F.Supp.2d 595, 602 (D.N.J.1999); *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D.Pa.1994). Simply put, a "potential spoliator need do only what is reasonable under the circumstances." *Hirsch*, 266 N.J.Super. at 251, 628 A.2d at 1122 (internal quotation marks and citation omitted); *accord In re Wechsler*, 121 F.Supp.2d at 420; *Kolanovic*, 77 F.Supp.2d at 602.

■ In this case, defendants acted reasonably under the circumstances. The uncontroverted evidence discloses that on February 26, 1999, the very date of plaintiff's retention of Mr. Abrahams, Commercial Union sent him a six-page fax, which identified the location of the vehicle (Art's Auto Body) and contact information for that entity (*see* Def. Stmt. ¶¶ 5–6; *see also* Def. Ex. I; Def. Ex. J), and warned that the vehicle was "collecting storage [and] should be removed ASAP." Def. Ex. K. Thus, at least as of two weeks following the accident, plaintiff and her counsel were or should have been aware of the location of the vehicle and of the need for them to

---

8. Plaintiff's submissions are totally devoid of caselaw citations.

9. The court's rationale in *Fada*—which relied upon the insurer's duty to defend its insured—does not apply to this case, where the disposal of the automobile did not interfere with plaintiff's ability to *defend* an action against her. *See id.* at 12, 730 N.Y.S.2d 827 ("From a policy perspective, the obligation of the insurer to defend must carry with it the obligation to preserve key evidence relied upon by its insured to defend against property damage claims."). Moreover, even the court in *Fada* recognized a number of factors militating against the recognition of the tort of spoliation of evidence, such as "the uncertainty of the existence or extent of damages; recognition of the tort interferes with a person's right to dispose of his property as he chooses; destruction of the property may be reasonable under the facts of a specific case . . . ." *Id.* at 9–10, 730 N.Y.S.2d 827.

promptly take possession of the vehicle if they wished to preserve it. Nevertheless, they failed to contact Art's Auto Body either to retrieve the vehicle or to arrange for its inspection by an expert.[10] In the face of this inaction, and pursuant to the contract of insurance, defendant paid for the vehicle, plaintiff accepted payment, and defendant took ownership of the vehicle and exercised "[its] right to dispose of [its] property as [it chose] . . . ." *Fada,* 189 Misc.2d at 9, 730 N.Y.S.2d 827.

▮ To be sure, "an opportunity for inspection should be afforded [an interested] party before relevant evidence is destroyed." *Baliotis,* 870 F.Supp. at 1290–91. Here, however, defendant waited until May 17, 1999, to dispose of the vehicle, nearly three months after plaintiff's counsel admits to having been notified of the vehicle's location.[11] *See* Def. Ex. L. By notifying plaintiff's attorney of the vehicle's location in the February 26, 1999 fax, and by waiting until May 17, 1999, to dispose of the vehicle, defendant provided "the other side [ ] *adequate* [and] *meaningful* opportunity to inspect the evidence." *In re Wechsler,* 121 F.Supp.2d at 421 (emphasis in original). Any detriment suffered by plaintiff was thus the product of her counsel's dilatory and unprofessional handling of the case, and not by any tortious conduct on defendants' part.[12] *See Kolanovic,* 77 F.Supp.2d at 603 (destruction of ladder from which longshoreman fell did not give rise to tort claim for spoliation of evidence, where "defendants

kept the ladder for at least seventeen (17) months after the accident occurred."); *Henderson v. Tyrrell,* 80 Wash.App. 592, 611, 910 P.2d 522, 534 (1996) (upholding trial court's refusal to impose any sanction for spoliation of evidence where, after defense counsel requested that car be preserved, car owner waited one year before destroying it and defendants "had ample opportunity during that period to examine the car, and there is no evidence to suggest [the car owner] prevented them from doing so."); *compare In re Wechsler,* 121 F.Supp.2d at 420 (granting sanctions for spoliation of evidence where, "after another party had already agreed to pay for the vessel's continued storage," the vessel's owner had it destroyed after it had been in storage for only two weeks).

Accordingly, on the uncontroverted facts of this case, defendants acted reasonably and thus plaintiff could not prevail on any claim of intentional or negligent spoliation of evidence, even had such a claim been pléd.

### Plaintiff's Cross–Motion for Spoliation Sanctions

▮ Plaintiff requests that "defendants be sanction [sic] for their wrongfully [sic] conduct relating to their prevention of having the vehicle inspected." Pl. Aff. ¶ 10. A federal court may, under its inherent power to control the litigation before it, impose sanctions on litigants or their counsel for spoliation of evidence. *See West v. Goodyear Tire & Rubber Co.,* 167

---

**10.** Plaintiff's counsel did not engage an expert until June 15, 1999, more than four months after the accident and nearly four months after being notified of the vehicle's location.

**11.** Notwithstanding plaintiff's charge that defendant had some "ulterior motive" to prevent an inspection of the vehicle on plaintiff's behalf (*see* Pl. Aff. ¶ 10), the insurer's interest in any potential products liability action would have been consistent with, and not

adverse to, plaintiff's interests, in light of defendant's subrogation rights. *See, e.g., Fada,* 189 Misc.2d at 4 n. 1, 730 N.Y.S.2d 827.

**12.** As plaintiff's counsel acknowledges having received defendant's fax of February 26, 1999, disclosing the location of the vehicle, *see* Def. Exs. I, J and K, Attina's alleged delay in providing that information telephonically cannot form the basis for a spoliation claim.

F.3d 776 (2d Cir.1999); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Any sanction for spoliation should be "molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine," *West*, 167 F.3d at 779 (citations omitted), which is predicated upon the rationale that by destroying evidence, one party has deprived the other of the ability to prosecute or defend an action. *See Fada*, 189 Misc.2d at 8–9, 730 N.Y.S.2d 827; *see also Kronisch v. United States*, 150 F.3d 112, 126–30 (2d Cir.1998); *see id.* at 126 (a party may be sanctioned for spoliation of evidence where that party is under "an obligation to preserve it at the time it was destroyed.").[13]

 Plaintiff provides no supporting authority for her assumption that a court's inherent power to impose sanctions for spoliation extends to situations where, as here, the failure to preserve evidence occurred prior to the initiation of any lawsuit and allegedly impeded an action other than the one in which the sanctions are being sought. This Court is unaware of any decision in which a court has exercised this kind of power; ordinarily, the sanctions for spoliation involve preclusion of evidence, the drawing of an adverse inference, dismissal or default. *See West*, 167 F.3d at 779–80. Here, however, plaintiff is seeking monetary sanctions in a diversity action in which she has not asserted a viable state law claim. Whatever else it may mean, the "inherent power" doctrine does not effectively afford a federal cause of action for spoliation where a state law claim does not exist. To paraphrase the court in *State Farm Fire & Casualty Co. v. Frigidaire*, 146 F.R.D. 160, 162 (N.D.Ill.

1992): "[W]e can only conclude that the issue of [Commercial Union's] pre-suit duty to preserve material evidence is substantive and, as such, [New York] law governs." As discussed above, plaintiff has no cause of action under New York law.

 In any event, even if the Court had the inherent power to impose sanctions for pre-litigation conduct that allegedly impeded an entirely different action, this Court would not exercise that power in this case. For all the reasons discussed above,[14] defendant provided plaintiff and her attorney with an adequate and meaningful opportunity to inspect the vehicle. In these circumstances, the imposition of sanctions would not promote the punitive, remedial and prophylactic rationales of the spoliation doctrine. *See generally West*, 167 F.3d at 779–80 (citations omitted). Plaintiff's motion for sanctions is therefore denied.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted in its entirety and plaintiff's cross-motion for sanctions is denied. The Clerk is directed to enter judgment in defendants' favor and to dismiss the amended complaint with prejudice. The Clerk is further directed to mail copies of this Memorandum and Order to all counsel of record.

**SO ORDERED.**

---

**13.** However, as the Second Circuit recently observed, "[t]he law in this circuit is not clear on what state of mind a spoliator must have when destroying [evidence]." *Byrnie v. Town*

*of Cromwell*, 243 F.3d 93, 107–08 (2d Cir. 2001).

**14.** *See supra* pages 72–74.