[753 NYS2d 272]

METLIFE AUTO & HOME, as Subrogee of MICHAEL BASIL, Appellant, v JOE BASIL CHEVROLET, INC., et al., Respondents, et al., Defendants.

Fourth Department, December 30, 2002

APPEARANCES OF COUNSEL

*Regan & Regan*, Buffalo (*Christopher A. Spence* of counsel), for appellant.

*Kenney, Kanaley, Shelton & Liptak, L.L.P,* Buffalo (*Joanneke K.M. Brentjens* of counsel), for Joe Basil Chevrolet, Inc., respondent.

*Gibson, McAskill & Crosby, LLP,* Buffalo (*Kathleen M. Sweet* of counsel), for Royal Insurance Company, respondent.

**OPINION OF THE COURT**

KEHOE, J.

The issue before us, one not yet considered by the Court of Appeals or this Court, is whether to recognize a cause of action for a negligent or reckless act of spoliation of evidence committed by one not a party or a potential party to the underlying claim to which the spoliated evidence relates. Under the circumstances presented, we decline to recognize a cause of action for "third-party spoliation" of evidence/impairment of claim or defense, either under principles of negligence law or as an independent tort. We thus conclude that Supreme Court properly granted the motion of defendant Royal Insurance Company (Royal) to dismiss the complaint against it.

*I*

In reviewing the determination of a motion to dismiss pursuant to CPLR 3211, we must accept as true the facts alleged in the complaint and in the submissions in opposition to the motion, accord the plaintiff the benefit of every possible favorable inference, and determine whether the facts alleged fit within any cognizable legal theory (*see Sokoloff v Harriman Estates Dev. Corp.,* 96 NY2d 409, 414; *Edmond v International Bus. Machs. Corp.,* 91 NY2d 949, 951, *rearg denied* 92 NY2d 871; *Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.,* 90 NY2d 606, 609-610; *Leon v Martinez,* 84 NY2d 83, 87-88).

Plaintiff, MetLife Auto & Home (MetLife), commenced this action as subrogee of Michael Basil, MetLife's insured under a homeowner's policy. The claim to which MetLife is subrogated is for $330,888.64 in fire damage to the residence of Michael Basil and his wife. MetLife's complaint names as defendants Joe Basil Chevrolet, Inc. (Basil Chevrolet), General Motors Corp. (General Motors), Speaker Shop, Inc. (Speaker Shop), and Royal, and asserts four causes of action. The first three causes of action seek recovery from Basil Chevrolet, General Motors and Speaker Shop for the $330,888.64 in fire damage on theories of negligence, breach of warranties, and strict products liability. The basis for that underlying claim is the allegation that the fire started in the dashboard of a 1999 Chev-

rolet Tahoe that had been parked in the garage attached to the Basil residence. That was the preliminary conclusion reached by fire investigators, who did not perform a "cause and origin investigation" on the vehicle but instead left that for the "insurance company" to perform. The vehicle, which was manufactured by General Motors and owned by Basil Chevrolet, had been made available to Michael Basil and his wife for their use. Speaker Shop had performed "certain after market electrical work and [had] installed a remote starter" in the vehicle.

This appeal concerns MetLife's fourth cause of action, which is asserted against only Royal, the insurer of Basil Chevrolet and the Chevrolet Tahoe in question, and which likewise seeks recovery of $330,888.64. MetLife alleges that, after the fire, Royal "made arrangements to safeguard the integrity of the subject 1999 Chevrolet Tahoe and [placed it] at a storage lot [or salvage yard] under the direct supervision, control and observation of its duly authorized agent"; that "General Motors[,] Royal * * * [and MetLife] arranged for a joint inspection/testing of the subject vehicle on or about the 6th day of November, 2000 at the storage lot of" Royal's agent; but that, shortly before the inspection, MetLife learned "from the retained expert of [Royal] that the vehicle had been sold and removed from the storage lot and * * * substantially altered such that there was no chance to do a detailed, scientific and thorough analysis to determine the cause of the subject fire and resultant damage." MetLife alleges that, "as a result of the negligence, carelessness and recklessness of [Royal], invaluable, necessary and important evidence has been destroyed and lost[,] thereby irrevocably impairing [MetLife's] right to pursue successfully the defendants [Basil Chevrolet, General Motors and Speaker Shop]."

According to the averments of Mark D. Hagen, MetLife's subrogation adjustor, Royal "took possession" of the vehicle "as owner" upon indemnifying its insured, Basil Chevrolet, for the fire damage to the vehicle. Hagen subsequently asked both Royal and the salvage yard to preserve the vehicle for examination by MetLife and its experts. He was assured that Royal would "preserve and maintain the integrity of the vehicle so that a detailed cause and origin investigation could be performed." After an inspection had been scheduled by the various parties, Royal's expert notified Hagen that "Royal * * *, through [its] agent the salvage yard, had disposed of the vehicle," and that "the new owner of the vehicle had disassembled it, making a scientific cause and origin examination impossible."

In lieu of answering, Royal moved to dismiss the complaint against it for failure to state a cause of action (*see* CPLR 3211 [a] [7]), arguing that spoliation of evidence is not recognized as a cause of action in New York. MetLife opposed Royal's motion and moved for an order dismissing Royal's defense that the complaint fails to state a cause of action. MetLife further sought summary judgment on its cause of action against Royal for spoliation of evidence.

## II

The court granted the motion of Royal to dismiss the complaint against it and denied MetLife's motion.[1] We conclude that the court properly dismissed the complaint against Royal because no cause of action for negligent or reckless spoliation of evidence/impairment of claim lies against a nonparty to the underlying claim.

## III

Cases imposing an obligation to preserve and disclose evidence, and subjecting a party to statutory (*see* CPLR 3126) or common-law sanctions in the event of its failure to do so, are legion (*see e.g. Foncette v LA Express,* 295 AD2d 471; *Marro v St. Vincent's Hosp. & Med. Ctr. of N.Y.,* 294 AD2d 341; *Sage Realty Corp. v Proskauer Rose,* 275 AD2d 11, 17-18, *lv dismissed* 96 NY2d 937; *Yi Min Ren v Professional Steam-Cleaning,* 271 AD2d 602, 603; *Squitieri v City of New York,* 248 AD2d 201, 202-204; *Kirkland v New York City Hous. Auth.,* 236 AD2d 170, 173-176; *Mudge, Rose, Guthrie, Alexander & Ferdon v Penguin A.C. Corp.,* 221 AD2d 243). Such authorities are not directly applicable to the issue now before us, although they may become applicable to the case as it plays out (*see* n 5, *infra*). Here, we are concerned with an attempt to impose liability in tort for spoliation of evidence and consequent impairment of the spoliation victim's ability to prevail on an underlying claim to which the lost or destroyed evidence pertained or might have pertained.

Traditionally, spoliation has been defined as the "intentional destruction, mutilation, alteration, or concealment of evidence,

---

1. The order also dismissed or otherwise refused to permit cross claims against Royal for spoliation of evidence/impairment of defense. Absent cross appeals by the codefendants, we will not address the viability of such cross claims, nor will we address the other provisions of the order. Further, in view of our decision, we need not address the contention of MetLife that it is entitled to summary judgment on its cause of action for spoliation of evidence.

[usually] a document" (Black's Law Dictionary 1409 [7th ed 1999]). As employed in case law, however, spoliation is a much broader term, one that has been applied to intentional conduct ranging from the deliberate destruction of evidence with fraudulent intent to innocent practices and occurrences in the ordinary course of business or events. Moreover, despite its denotation of intentionality, the term has been applied in case law to unintentional conduct, such as the apparently inadvertent (from Royal's standpoint) destruction of the fire-damaged vehicle in this case.

We are not concerned here with allegations of intentional spoliation (*see generally* Annotation, *Intentional Spoliation of Evidence, Interfering with Prospective Civil Action, as Actionable*, 70 ALR4th 984), but rather with alleged negligence or recklessness in the loss or destruction of evidence (*see generally* Annotation, *Negligent Spoliation of Evidence, Interfering with Prospective Civil Action, as Actionable*, 101 ALR5th 61). Despite the allegations of fault on the part of Royal itself, we are concerned not with Royal's own direct loss or destruction of the evidence, but with Royal's allegedly permitting the evidence to be lost or destroyed by another entity, i.e., the storage lot or salvage yard allegedly employed as Royal's agent. Moreover, we are concerned with an attempt to impose liability for spoliation not on a party (i.e., a litigant or potential litigant) to the underlying claim (*see generally id.* § 3 [a]),[2] but on a nonparty to it (*see generally id.* § 4),[3] in particular, the insurer of a defendant to the underlying claim (*see generally id.* § 18 [a], [b]). To put it differently, we are concerned with an act of spoliation allegedly committed by an entity that, if not entirely a stranger to the underlying claim, certainly could not have been held directly liable on that claim.

The viability of a cause of action for spoliation of evidence— whether alleged under general principles of negligence law or as an independent intentional or nonintentional tort and whether alleged against a first party or third party—has been the subject of much case law and commentary. A cause of action for spoliation of evidence appears to have been first recognized in 1973 (*see Pirocchi v Liberty Mut. Ins. Co.,* 365 F Supp 277, 281-282 [applying Pennsylvania law]), although that particular nomenclature apparently was not used until 1984 (*see Smith v Superior Ct.,* 151 Cal App 3d 491, 198 Cal Rptr

2. This has been called "first-party spoliation."
3. This has been called "third-party spoliation."

829). Since then, those "courts that have found negligent spoliation to be actionable generally require proof of the destruction of evidence, the existence of a duty, damages, and proximate causation" (101 ALR5th at 82). Clearly, a duty to preserve evidence is at the heart of any purported cause of action for negligent spoliation, and the provability of both the fact and extent of harm is the linchpin of any determination whether to recognize such a cause of action in general.

## IV

Before addressing the case law in New York concerning this issue, we look to the case law in other jurisdictions. The great weight of authority runs against recognizing a common-law duty to preserve evidence or a cause of action for spoliation of evidence/impairment of claim or defense under almost any circumstances, even when the conduct is alleged to have been intentionally committed by a party to the underlying claim[4] (*see e.g. Caleb v CRST, Inc.,* 43 Fed Appx 513, 516-517 [applying Pennsylvania law]; *Bass v E.I. Dupont De Nemours & Co.,* 28 Fed Appx 201, 206 [applying Virginia law], *cert denied* 536 US 972; *Goff v Harold Ives Trucking Co., Inc.,* 342 Ark 143, 150-151, 27 SW3d 387, 391; *Trevino v Ortega,* 969 SW2d 950, 951-953 [Tex]; *Cedars-Sinai Med. Ctr. v Superior Ct.,* 18 Cal 4th 1, 8-18, 954 P2d 511, 515-521; *Monsanto Co. v Reed,* 950 SW2d 811, 815 [Ky]; *Christian v Kenneth Chandler Constr. Co., Inc.,* 658 So 2d 408, 413-414 [Ala]; *Brown v Hamid,* 856 SW2d 51, 56-57 [Mo]; *La Raia v Superior Ct. In & For Maricopa County,* 150 Ariz 118, 121, 722 P2d 286, 289; *Parker v Thyssen Min. Constr., Inc.,* 428 So 2d 615, 617-618 [Ala]; *Richardson v Simmons,* 245 Ga App 749, 750, 538 SE2d 830, 832; *Miller v Montgomery County,* 64 Md App 202, 213-215, 494 A2d 761, 767-768, *cert denied* 304 Md 299, 498 A2d 1185; *see also Torres v El Paso Elec. Co.,* 127 NM 729, 745-746, 987 P2d 386, 402-403; *Coleman v Eddy Potash, Inc.,* 120 NM 645, 650-651, 905 P2d 185, 190-191 [both cases rejecting causes of action for negligent spoliation by first party]). Especially

---

4. We catalog holdings such as this because those courts that do not recognize a cause of action for intentional spoliation certainly would not recognize one for negligent spoliation, and because it stands to reason that those courts that do not recognize such a cause of action against a first party likewise would not recognize one against a third party. As stated by one court, it would be anomalous—"a strange outcome indeed"—"for a nonparty to be liable in damages * * * for conduct that would not give rise to tort liability if committed by a party" (*Temple Community Hosp. v Superior Ct.,* 20 Cal 4th 464, 466, 477, 976 P2d 223, 225, 233).

numerous are those decisions rejecting or refusing to recognize a cause of action for negligent spoliation of evidence by a nonparty to the underlying claim (*see e.g. Wilson v Beloit Corp.,* 921 F2d 765, 767-768 [8th Cir] [applying Arkansas law]; *Moore v United States/U.S. Dept. of Agric. Forest Serv.,* 864 F Supp 163, 164-165 [D Colo] [applying Colorado law]; *Edwards v Louisville Ladder Co.,* 796 F Supp 966, 968-972 [WD La] [applying Louisiana law]; *Fletcher v Dorchester Mut. Ins. Co.,* 437 Mass 544, 547-553, 773 NE2d 420, 424-428; *Nichols v State Farm Fire & Cas. Co.,* 6 P3d 300, 304-305 [Alaska]; *Meyn v State,* 594 NW2d 31, 33-34 [Iowa]; *Austin v Consolidation Coal Co.,* 256 Va 78, 82-84, 501 SE2d 161, 163-164; *Smith v Howard Johnson Co., Inc.,* 67 Ohio St 3d 28, 29, 615 NE2d 1037, 1038; *Owens v American Refuse Sys., Inc.,* 244 Ga App 780, 781, 536 SE2d 782, 784; *Elias v Lancaster Gen. Hosp.,* 710 A2d 65, 67-69 [Pa Super]).

In contrast, those decisions that permit a cause of action for even an intentional act of spoliation by a third party are comparatively few (*see e.g. Ricketts v Eastern Idaho Equip., Co., Inc.,* 137 Idaho 578, 581-582, 51 P3d 392, 395-396; *Hibbits v Sides,* 34 P3d 327, 328-330 [Alaska]; *Oliver v Stimson Lbr. Co.,* 297 Mont 336, 352-353, 993 P2d 11, 21-22; *Smith,* 67 Ohio St 3d at 29, 615 NE2d at 1038; *McCool v Beauregard Mem. Hosp.,* 814 So 2d 116, 118 [La App]). Cases recognizing a cause of action for negligent or reckless third-party spoliation of evidence are rarer still (*see e.g. Smith v Atkinson,* 771 So 2d 429, 432-438 [Ala]; *Oliver,* 297 Mont at 348-352, 993 P2d at 19-21; *Boyd v Travelers Ins. Co.,* 166 Ill 2d 188, 192-198, 652 NE2d 267, 269-272; *McCool,* 814 So 2d at 118; *Guillory v Dillard's Dept. Store, Inc.,* 777 So 2d 1, 3-5 [La App]; *Thompson ex rel. Thompson v Owensby,* 704 NE2d 134, 136-140 [Ind App]; *Holmes v Amerex Rent-A-Car,* 710 A2d 846, 847 [DC]; *Continental Ins. Co. v Herman,* 576 So 2d 313, 315 [Fla App], *review denied* 598 So 2d 76). Certain courts have held or suggested that, if a cause of action for spoliation exists, it nevertheless would not lie unless and until the underlying claim has been resolved, thereby causing a concrete injury to the spoliation plaintiff (*see e.g. Federated Mut. Ins. Co. v Litchfield Precision Components, Inc.,* 456 NW2d 434, 437-439 [Minn]; *Mayfield v ACME Barrel Co.,* 258 Ill App 3d 32, 38-39, 629 NE2d 690, 695-696; *Baugher v Gates Rubber Co., Inc.,* 863 SW2d 905, 907-914 [Mo App]; *Continental Ins. Co.,* 576 So 2d at 315-316; *Bondu v Gurvich,* 473 So 2d 1307, 1311-1313 [Fla App], *review denied sub nom. Cedars of Lebanon Hosp. Care Ctr., Inc. v Bondu,* 484 So 2d 7; *Fox v Cohen,* 84 Ill App 3d 744, 751, 406 NE2d 178, 183).

V

A handful of New York cases recognize an independent cause of action for third-party spoliation, although all such cases are factually distinguishable from this case. Moreover, most such cases are narrowly confined to the scenario in which an employee sues his employer for its spoliation of evidence and consequent impairment of the employee's claim against a third-party tortfeasor. Even under that line of cases, however, the duty to preserve evidence imposed upon the employer in that situation is rather limited (*see Ripepe v Crown Equip. Corp.*, 293 AD2d 462, 463-464; *Curran v Auto Lab Serv. Ctr.*, 280 AD2d 636, 637-638; *DiDomenico v C & S Aeromatik Supplies*, 252 AD2d 41, 53-54; *Vaughn v City of New York*, 201 AD2d 556, 558; *Coley v Arnot Ogden Mem. Hosp.*, 107 AD2d 67, 68-70; *Weigl v Quincy Specialties Co.*, 158 Misc 2d 753,756-757; *see also Caban v Gottlieb Iron Works*, 147 Misc 2d 583, 586-587, *affd sub nom. Caban v Bonoco Constr. Corp.*, 172 AD2d 377). In our view, that line of cases provides no support for recognizing the instant cause of action for negligent spoliation of evidence against a nonparty to the underlying claim, inasmuch as MetLife is in no position to rely on the judicially-formulated duty of an employer not to thwart its employee's right of action against a third-party tortfeasor.

An appellate decision that appears to reject on the facts an independent claim for intentional spoliation of evidence by a third party (other than by an employer) is that of the First Department in *Steinman v Barclays Bank* (276 AD2d 436, *lv dismissed* 96 NY2d 818). Another that appears to reject on the facts an independent cause of action for first-party spoliation is the First Department's decision in *Fairclough v Hugo* (207 AD2d 707, 708, citing *Pharr v Cortese*, 147 Misc 2d 1078 [Sup Ct, NY County] [rejecting on the facts a cause of action for intentional first-party spoliation]). A number of trial-level federal decisions rule out a cause of action for first-party or third-party spoliation, whether intentional or negligent or both, as a matter of New York law (*see Sterbenz v Attina*, 205 F Supp 2d 65, 71-73; *Tiano v Jacobs*, 2001 WL 225037, *4, 2001 US Dist LEXIS 2188, *12-14 [SD NY, Mar. 6, 2001]; *Black Radio Network, Inc. v NYNEX Corp.*, 44 F Supp 2d 565, 585-586; *Tietjen v Hamilton-Beach/Proctor-Silex, Inc.*, 1998 WL 865586, *3, 1998 US Dist LEXIS 19404, *7-8 [ND NY, Nov. 25, 1998]; *Whittlesey v Espy*, 1996 WL 689402, *1, 1996 US Dist LEXIS 17638, *2 [SD NY, Nov. 26, 1996]; *Mondello v Dun & Bradstreet Corp.*, 1996 WL 239890, *3 n 1, 1996 US Dist LEXIS 6189, *7 n 1 [SD NY, May 9, 1996]).

MetLife places much reliance on *Fada Indus. v Falchi Bldg. Co.* (189 Misc 2d 1), a trial-level decision concerned with allegations of negligent third-party spoliation by an insurer. There, a tenant sued the owner and manager of its building and a cotenant to recover for property damage caused by the cotenant's leaking water heater. Before commencement of that action, the cotenant's insurer took possession of the water heater, which subsequently was lost or destroyed while in the possession of an agent of the insurer. The cotenant impleaded its own insurer for its negligent loss of the water heater, theorizing that such loss had impaired its ability to defend the action and had prevented it from impleading the entities that negligently manufactured, installed or repaired the water heater. The insurer moved to dismiss the third-party complaint against it, but Supreme Court denied the motion, thereby sustaining the third-party claim for negligent spoliation of evidence/impairment of defense (*see id.* at 3-13).

Another case of alleged spoliation by a third-party insurer is *Sterbenz* (205 F Supp 2d 65). In that case, the plaintiff's husband was killed in a single-car accident in which plaintiff was the driver. Following the accident, the car was taken to a salvage yard and inspected by the plaintiff's insurer, which declared the car a total loss. After paying the plaintiff's collision claim, the insurer assumed ownership of the car and, despite the plaintiff's alleged requests to preserve it, sold the car. The plaintiff's expert first attempted to examine the car some five months after the accident, learning that it had been sold two months earlier, prior to the commencement of any lawsuit. The plaintiff sued the insurer and one of its claims agents, alleging spoliation of evidence and impairment of her products liability claim against the manufacturer of the car. The court for the Eastern District of New York granted the insurer's motion for summary judgment dismissing the action, declaring any claim for spoliation of evidence groundless under New York law and determining the insurer's conduct to have been reasonable in any event (*see id.* at 71-73).

Here, in contradistinction to the situation in both *Fada Indus.* and *Sterbenz*, there is no relationship between Royal, the defendant insurer, and MetLife, the plaintiff (or its subrogor, Michael Basil). MetLife is not the insured of the defendant but rather merely a potential claimant (by subrogation) against Royal's insured, Basil Chevrolet. It is thus impossible here to formulate a duty to preserve evidence running from Royal to MetLife (or to Michael Basil, MetLife's subrogor)

by virtue of an insurance contract. MetLife posits a duty to preserve evidence based upon Royal's voluntary promise and undertaking to do so. However, for the reasons discussed *infra,* we decline to recognize such a duty as a basis for imposing tort liability for a negligent or reckless act of spoliation committed by a nonparty to the underlying claim.

## VI

Recognition of a cause of action for third-party spoliation is fraught with pitfalls. Foremost among them is the notion of placing a third party under a duty to preserve evidence for the benefit of strangers and in anticipation of as-yet-uncommenced litigation (*see Fletcher,* 437 Mass at 548, 773 NE2d at 424-425; *Koplin v Rosel Well Perforators, Inc.,* 241 Kan 206, 208-213, 734 P2d 1177, 1179-1182), in the absence of an easily obtainable court order mandating such preservation (*see Owens,* 244 Ga App at 781, 536 SE2d at 784). In our view, requiring a court order as an essential (but not necessarily sufficient) predicate for imposing liability on a third party places the burden for preserving evidence where it belongs—on the party seeking its preservation. More problematic is the notion of holding a third party liable for destroying or discarding its own property under such circumstances; such liability would in our view constitute an unwarranted infringement on property rights (*see Edwards,* 796 F Supp at 970; *Koplin,* 241 Kan at 212-215, 734 P2d at 1181-1183; *Baugher,* 863 SW2d at 912). In that connection, we note that, prior to the disposal of the fire-damaged vehicle, Royal had assumed ownership of the vehicle upon indemnifying its insured, Basil Chevrolet.

Another pitfall concerns the societal costs of mandating the preservation of anything that might conceivably be or become evidence (*see Temple Community Hosp.,* 20 Cal 4th at 476, 976 P2d at 232). As noted by one court, the recognition of a cause of action for spoliation would require "persons or entities to take extraordinary measures to preserve for an indefinite period documents and things of no apparent value solely to avoid the possibility of spoliation liability if years later those items turn out to have some potential relevance to future litigation" (*Cedars-Sinai Med. Ctr.,* 18 Cal 4th at 15, 954 P2d at 519).

In that connection, we note that many vehicles relegated to a salvage yard would ordinarily constitute relevant evidence of at least a potential property damage claim (*see Edwards,* 796 F Supp at 970 n 9). We further note that

"[a] separate tort remedy would be subject to abuse,

for in many cases potentially relevant evidence will no longer exist at the time of trial, not because it was intentionally destroyed but simply because it has been discarded or misplaced in the ordinary course of events. (Comment, *Spoliation of Evidence: A Troubling New Tort* (1989) 37 U. Kan. L. Rev. 563, 592 ['A new cause of action could accrue each time a plaintiff loses a lawsuit, for in most cases there is likely to be some piece of potential evidence that is not available at the time of trial.'].)" (*Cedars-Sinai Med. Ctr.,* 18 Cal 4th at 15, 954 P2d at 519.)

The foregoing considerations lead us to conclude that it would be extremely difficult if not impossible to rationally limit, explicitly define, and coherently articulate the outer limits of any judicially-declared duty on the part of third parties to preserve evidence for the benefit of litigants or potential litigants (*see Koplin,* 241 Kan at 208-215, 734 P2d at 1179-1183).

There would be even greater potential difficulties with the mechanics of a cause of action for third-party spoliation of evidence, if one were to be recognized. The most obvious of those would be the impossibility in most circumstances of ascertaining the precise nature or substance of the lost or destroyed evidence (*see Goff,* 342 Ark at 149, 27 SW3d at 390; *Cedars-Sinai Med. Ctr.,* 18 Cal 4th 1, 13-15, 954 P2d 511, 518-519). Moreover, there would be unfairness and rank speculation inherent in simply assuming that the spoliated evidence would have favored the spoliation plaintiff rather than his adversary—if indeed it would have favored either party to the underlying claim or litigation (*see Fletcher,* 437 Mass at 551-552, 773 NE2d at 427; *Temple Community Hosp.,* 20 Cal 4th at 474-475, 976 P2d at 231; *Koplin,* 241 Kan at 215, 734 P2d at 1183). Indeed, it may be the case that both parties to the underlying claim will have suffered injury as a result of a third party's single act of spoliation, thereby giving rise to competing claims of spoliation and the potential for inconsistent verdicts (*see Temple Community Hosp.,* 20 Cal 4th at 476, 976 P2d at 231-232). For example, there may well be instances in which different parts of a document or different aspects of an item of evidence would favor opposing parties. Courts cannot be expected to adjudicate a claim for damages where it is so difficult to determine who, if anyone, has suffered a loss (*see* 20 Cal 4th at 475, 976 P2d at 231). There is also the consequent unfairness of essentially

rendering the inadvertent spoliator the insurer of either the underlying claim or the underlying liability, depending on which underlying party is assumed to have been injured (or more injured) by the loss of the evidence.

Regardless of which underlying party is deemed to have been injured by the loss of the evidence, it would nonetheless be extremely difficult to establish causation, i.e., a link between the unavailability of the evidence and any assumed impairment of the claim or defense (*see Fletcher,* 437 Mass at 548, 773 NE2d at 424-425; *Temple Community Hosp.,* 20 Cal 4th at 474-475, 976 P2d at 231). Moreover, speculation would be unavoidable in ascertaining what effect the missing evidence might have had on the underlying litigation and whether the claim or defense has been significantly impaired by the loss or destruction of the evidence (*see Goff,* 342 Ark at 149, 27 SW3d at 390; *Cedars-Sinai Med. Ctr.,* 18 Cal 4th at 13-15, 954 P2d at 518-519; *Koplin,* 241 Kan at 215, 734 P2d at 1183). Merely because the spoliation victim has lost or stands to lose the underlying lawsuit without the spoliated evidence does not mean that it would have prevailed with the evidence (*see Edwards,* 796 F Supp at 970; *Federated Mut. Ins. Co.,* 456 NW2d at 437). The uncertainty of the fact of harm

> "would create the risk of erroneous determinations of spoliation liability (that is, findings of liability in cases in which availability of the spoliated evidence would not have changed the outcome of the underlying litigation). An erroneous determination of spoliation liability would enable the spoliation victim to recover damages, or avoid liability, for the underlying cause of action when the spoliation victim would not have done so had the evidence been in existence" (*Cedars-Sinai Med. Ctr.,* 18 Cal 4th at 15, 954 P2d at 519).

At bottom, the insurmountable problem is the intrinsic circularity of any allegation that the underlying claim has been defeated or lost as a result of the spoliation of evidence. As has been noted:

> "To establish causation and damages, the plaintiff would have to show that the [actual or hypothetical] jury in the underlying action would have found differently if the original, unaltered item of evidence had been before them. Such a showing requires proof of the very thing that can no longer

be proved: the precise nature of the original item. If the contents or salient characteristics of the original item can still be shown, then they can be [or could have been] shown in the underlying action and there is no damage from any 'spoliation.' If they cannot be shown, then the jury in the spoliation action could only surmise whether the item in its original state would in fact have been favorable to the party now claiming to have suffered a loss on account of that spoliation. And, it would be the utmost of surmise and speculation for the jury to decide what persuasive effect that item, if still available in its original state, would have had on the [actual or hypothetical] jury in the underlying action. Ultimately, such claims are inherently circular, calling on one jury to revisit what another jury ha[s] already decided [or might have decided] and to determine whether something that still cannot be shown would, had it been available, have changed that original [or hypothetical] jury's opinion" (*Fletcher,* 437 Mass at 551-552, 773 NE2d at 426-427).

Even if the fact of harm can be ascertained or assumed, it would be virtually impossible to measure the degree of harm and the precise extent of damages, and any attempt to do so would involve inherent and irreducible speculation (*see Trevino,* 969 SW2d at 952; *Cedars-Sinai Med. Ctr.,* 18 Cal 4th at 14-15, 954 P2d at 519). Moreover, there is the ancillary problem of appropriately adjusting the damages to take into account the estimated (or assumed) likelihood of success of the underlying claim or defense (*see generally Holmes,* 710 A2d at 853-854). There is also the undeniable fact that, whatever its factual merits might be, the claim of spoliation is patently premature unless and until the victim has failed to prevail on the underlying claim or defense; until then, the spoliation victim has not suffered any concrete harm (*see Federated Mut. Ins. Co.,* 456 NW2d at 439; *Baugher,* 863 SW2d at 914; *see also Continental Ins. Co.,* 576 So 2d at 315-316; *cf. Goff,* 342 Ark at 149-150, 27 SW3d at 391).

Finally, there is the risk of generating a spiral of contemporaneous or subsequent collateral or satellite litigation based on allegations of spoliating conduct committed not only in advance of, but also throughout, the prosecution of the underlying claim (*see Temple Community Hosp.,* 20 Cal 4th at 472, 976 P2d at

229, citing *Cedars-Sinai Med. Ctr.*, 18 Cal 4th at 9-11, 954 P2d at 515-516; *Meyn*, 594 NW2d at 34; *Koplin*, 241 Kan at 215, 734 P2d at 1183). In such collateral or satellite litigation, all of the evidence in the underlying action would have to be precisely re-presented so that the jury in the spoliation action could accurately determine what impact the missing evidence would have had in light of all the other evidence (*see Temple Community Hosp.*, 20 Cal 4th at 475, 976 P2d at 231). That retrial-within-a-trial scenario would be especially likely to result in jury confusion, in our view. Perhaps just as confusing would be the scenario contemplated herein, whereby a single jury would hear both the underlying claim and the spoliation claim, yet would be expected to refrain from considering the substance of the missing evidence in deciding the underlying claim against the primary defendants while nevertheless determining the impact (on the underlying claim) of the loss or destruction of that evidence and deciding the spoliation claim against the third party accordingly.

"In sum, we conclude that the benefits of recognizing a tort cause of action, in order to deter third party spoliation of evidence and compensate victims of such misconduct, are outweighed by the burden to litigants, witnesses, and the judicial system that would be imposed by potentially endless litigation over a speculative loss, and by the cost to society of promoting onerous record and evidence retention policies" (*Temple Community Hosp.*, 20 Cal 4th at 478, 976 P2d at 233). We thus decline to recognize an inherently speculative and hopelessly circular cause of action for spoliation of evidence where, as here, the act of spoliation was allegedly inadvertent, occurred prior to commencement of the underlying claim, and was committed by one not a party to the underlying claim and with no relationship, and hence no duty, to MetLife, the spoliation plaintiff. Instead, we join the majority of courts that have recognized the comparative advantages of remedying any injury through the imposition of carefully chosen and specifically tailored sanctions within the context of the underlying action[5] (*see generally Fletcher*, 437 Mass at 547-553, 773 NE2d at 424-428; *Goff*, 342 Ark at 146-151, 27 SW3d at 389-391; *Nichols*, 6 P3d at 304; *Temple Community Hosp.*, 20 Cal 4th at

---

5. We have no occasion here to address whether Royal might be deemed to have been acting as the agent of its insured, Basil Chevrolet, when it lost the critical evidence, thereby potentially subjecting Basil Chevrolet to the typical range of statutory and common-law sanctions available against a litigant responsible for the loss or destruction of evidence.

469-478, 976 P2d at 227-233; *Trevino,* 969 SW2d at 952-953; *Cedars-Sinai Med. Ctr.,* 18 Cal 4th at 8-17, 954 P2d at 515-521; *Federated Mut. Ins. Co.,* 456 NW2d at 437-439; *Koplin,* 241 Kan at 208-213, 734 P2d at 1179-1182). To the extent that remedies against an alleged third-party spoliator appear to be "limited, that may well be because third party spoliation has not [been] a significant problem in our courts" (*Temple Community Hosp.,* 20 Cal 4th at 477, 976 P2d at 232).

Accordingly, the order should be affirmed.

HAYES, J.P., HURLBUTT, BURNS and LAWTON, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed, with costs.